888 P.2d 992

**TOM GROWNEY EQUIPMENT, INC., Plaintiff–Appellee,**

**v.**

**Jim ANSLEY a/k/a Jimmie C. Ansley, Defendant–Appellant.**

**No. 15647.**

Court of Appeals of New Mexico.

Dec. 2, 1994.

Certiorari Denied Jan. 17, 1995.

Kenneth C. Downes, Mark Patrick Geiger, McClaugherty, Silver & Downes, P.C., Albuquerque, for plaintiff-appellee.

Stephen P. Curtis, Albuquerque, for defendant-appellant.

## OPINION

BOSSON, Judge.

This case presents an issue of first impression in New Mexico. The question is whether an equipment repair shop may recover in restitution for the value of work done where the owner did not authorize or otherwise encourage the repairs. The district court upheld the claim. Being persuaded that the repair shop does not have such an action, we reverse.

### FACTS

The facts are not in dispute. Jim Ansley (Owner) sold a backhoe loader on credit to Charles Edwards in 1988. Owner retained a security interest but neglected to record it. In November 1991 Edwards took the backhoe to Tom Growney Equipment, Inc. ("Repairer") for repairs. At the time, Edwards had an open account with Repairer. The repairs were duly performed and Repairer released the backhoe to Edwards in exchange for a promissory note. Repairer believed that Edwards owned the backhoe free of any creditor's security interest and was unaware of Edwards' obligation to Owner. Similarly, Owner was unaware of the services provided by Repairer, or that Repairer was owed any money by Edwards.

Ultimately, Edwards defaulted on both obligations, and in March 1992, Owner repossessed the backhoe from Edwards. Repairer brought suit against both Edwards and Owner for the balance owed on the promissory note. Repairer has not pursued the claim against Edwards. Owner and Repairer filed cross-motions for summary judgment. The district court entered summary judgment against Repairer on claims of open account and lien, finding that Repairer had no contractual relationship with Owner and had waived a claim of lien by releasing the backhoe to Edwards. However, the court did enter summary judgment against Owner "on [Repairer's] claim for *quantum meruit* in the amount of $7,002.53." Owner appeals from that judgment.

### DISCUSSION

■ Repairer seeks recovery for the value of services performed. Had the services been at Owner's request, Repairer would

have had a claim for express contract or perhaps one implied-in-fact. *See* 1 Dan B. Dobbs, *Dobbs Law of Remedies* § 4.2(3), at 582–83 (2d ed. 1993). However, Owner was not even aware of the services, and therefore Repairer must look to some other remedy.

Even without an action in contract, it is reasonably arguable, if not undisputed, that Owner has benefitted to some degree from the repairs. Thus, Repairer may have a claim for restitution based upon a theory of quasi-contract (contract implied-in-law) to prevent unjust enrichment. *See id.* at 583 ("If recovery is allowed for such unrequested services, it is clear that the recovery is the quasi-contract sort, that is, based upon the principle against unjust enrichment and not on contract."). If restitution is available, it would likely result in a measure of damages, quantum meruit, which is significantly different from contract. *See id.* ("When the service was not sought by the defendant, if restitution is allowed at all it is usually measured by the increase in defendant's assets resulting from the service, not by the value of the service itself.").

New Mexico has recognized a theory of quantum meruit distinct from contract. *See Terry v. Pipkin*, 66 N.M. 4, 7, 340 P.2d 840, 842 (1959). More recently, our Supreme Court characterized the action as a claim for unjust enrichment. *Hydro Conduit Corp. v. Kemble*, 110 N.M. 173, 176, 793 P.2d 855, 858 (1990). In describing that action, the Supreme Court has identified the theory and rationale: " 'One who has been unjustly enriched at the expense of another may be required by law to make restitution. *Restatement of Restitution* § 1 comments a, b, c (1937). This quasi-contractual obligation is created by the courts for reasons of justice and equity, notwithstanding the lack of any contractual relationship between the parties.' " *Id.* at 175, 793 P.2d at 857 (quoting *United States ex rel. Sunworks Div. of Sun Collector Corp. v. Insurance Co. of N. Am.*, 695 F.2d 455, 458 (10th Cir.1982) (citations and footnote omitted)). In *Danley v. City of Alamogordo*, 91 N.M. 520, 522, 577 P.2d 418, 420 (1978), the Supreme Court applied this theory in determining a city's liability for services performed by a contractor, notwithstanding the city's failure to comply with state purchasing laws which invalidated a contract between the city and the contractor.

These and other New Mexico cases have discussed the theory and rationale in situations where the recipient of the benefit actually knew or should have known of the services performed, which is usually a foundation for relief under an implied-in-fact contract. However, no New Mexico case directly addresses the legal issue presented here, where the services are unsolicited and unknown. In this situation, the provider is left with a restitutionary remedy based upon a contract implied-in-law which serves to alleviate unjust enrichment. Here we must concern ourselves with the fundamental question of whether the resulting enrichment is the equivalent of that characterized by our Supreme Court as "unjust," and thus whether we should impute such a quasi-contract as a matter of law and compel restitution.

■■■■ In what Professor Dobbs describes as the "orthodox view," restitution is ordinarily *not* available under the circumstances in this case. *See* Dobbs, *supra*, § 4.9(5), at 701. That general rule is founded upon the owner's fundamental right of free choice: the exclusive right to determine whether his property shall be repaired and if so, by whom. That right of choice necessarily includes the right not to pay for services rendered without knowledge or consent. This principle permeates the equitable foundations of restitution. *See id.* § 4.9(2).

Underlying most of the cases, however, seems to be a strong double commitment to prevent unjust enrichment on the one hand and to protect the defendant's right of free choice on the other. Where the defendant has a right to choose for himself whether to receive a benefit, and where restitution would deprive him of this choice by requiring payment for a "benefit" the defendant may not want, restitution is often denied. The right of self-determination through personal choices—that is, personal autonomy—is central to personal being and growth as well as to the concept of a free society.

*Id.* at 683.

This view appears to be consistent with the general rule in the majority of jurisdictions

where the owner does not know of or otherwise encourage the repairs provided. *See, e.g., Bank of Am. v. J. & S. Auto Repairs,* 143 Ariz. 416, 694 P.2d 246 (1985) (en banc) (repairer has no claim against bank holding purchase money mortgage unless repairer is sued in conversion); *Austrian Motors, Ltd. v. Travelers Ins. Co.,* 156 Ga.App. 618, 275 S.E.2d 702 (1980) (owner may retake automobile with accessions; repairer lien cannot be asserted against owner who did not authorize repairs); *United States Fidelity & Guar. Co. v. Marshall,* 4 Kan.App.2d 9, 601 P.2d 1169 (1979) (one who repaired at the instance of a thief has no claim against owner); *see also* Dobbs, *supra,* § 4.9(5), at 701 n. 8; *General Exch. Ins. Corp. v. Pellissier Square Garage,* 24 Cal.App.2d Supp. 768, 69 P.2d 236 (1937) (owner not liable to mechanic for repairs requested by a thief); *Eddie's Auto Body Works, Inc. v. Lumbermen's Mut. Casualty Co.,* 28 A.D.2d 995, 283 N.Y.S.2d 306, 307 (1967) (same); *Bob Ryan Leasing v. Sampair,* 125 Wis.2d 266, 371 N.W.2d 405 (Ct. App.1985) (garage keeper's lien could not be imposed against an owner of a leased car when storage by lessee occurred without owner's consent). *But see Iacomini v. Liberty Mut. Ins. Co.,* 127 N.H. 73, 497 A.2d 854, 858 (1985). II George E. Palmer, *Law of Restitution* § 10.9, at 454–55 (1978 & Supp. 1994) (discussing American case law regarding mistaken repair or improvement of chattels); Kristine Cordier Karnezis, Annotation, *Liability to Pay for Allegedly Unauthorized Repairs on Motor Vehicle,* 5 A.L.R. 4th 311 (1981). Although not all cases express their theoretical foundations identically, the general principle enjoys fairly uniform support.

■ We believe this is a fair rule and worthy of adoption in New Mexico. The case at hand falls comfortably within the majority rule. Although there may be some enrichment in terms of the value of those repairs to Owner, we do not believe that Owner has been enriched *unjustly. Restatement of Restitution, supra,* § 42 (stating principles governing improvements upon land or chattels); *cf. Hydro Conduit Corp.,* 110 N.M. at 176, 793 P.2d at 858. The result may be harsh to Repairer, which is left unpaid for its efforts. In our view, a greater inequity would arise if the law compelled Owner to pay for services he did not request, did not

authorize, and possibly did not want. *See Restatement of Restitution, supra,* § 42 cmt. a. We cannot remedy one wrong by inflicting a still greater injustice on another. *See* Dobbs, *supra,* § 4.9(5), at 702 ("So to require restitution is to require the owner to buy a benefit he did not ask for and may not want.").

■ Repairer argues that Owner negligently failed to record his security interest in the backhoe, and thus Repairer had no notice of Owner's interest in the property. Although it is true that the failure to file a financing statement resulted in a lack of constructive notice of Owner's interest, we believe Repairer's argument is unavailing. Repairer elected to accept a promissory note from Edwards for the value of the repairs and permitted Edwards to take possession of the backhoe, thereby releasing the possessory lien. Under these circumstances Repairer chose to look to Edwards for payment and waived the security provided by statute. NMSA 1978, Section 48–3–1 (Repl. Pamp.1987).

■ As long as Repairer retained possession of the backhoe, it had a mechanic's statutory lien upon the vehicle for the value of the labor, parts, and repairs rendered. Section 48–3–1(A) provides:

All artisans and mechanics shall have a lien on things made or repaired by them for the amount due for their work, and may retain possession thereof until said amount is paid. *Any person or corporation who repairs any motor vehicle or furnishes parts therefor, at the request or with the consent of any person lawfully in possession of any such motor vehicle, shall have a lien upon such motor vehicle or any part or parts thereof for the sum due for repairing the same, and for labor furnished thereon and for all costs incurred in enforcing such lien and may detain such motor vehicle in possession until such lien be paid.* [Emphasis added.]

Under Section 48–3–1 Repairer had a lien for repairs which was superior even to recorded prior liens on the same vehicle, and therefore superior to Owner's interest, as long as the work was ordered by a person lawfully in possession of the vehicle, which would apply here to Edwards. Repairer could have re-

tained the backhoe as security for full payment, but elected not to do so. Under these circumstances, we believe the result is governed by the rule set forth in *Restatement of Restitution, supra,* § 42(2), which states:

> A person who, in the mistaken belief that he or a third person on whose account he acts is the owner, adds value to the chattel of another, is not thereby entitled to restitution from the owner for the value of his services or the increased value given to the chattels; but if the owner brings an action for their conversion the added value or the value of the services, whichever is least, is deducted from the damages.

*See Bank of Am.,* 694 P.2d at 248. Owner did not sue Repairer in conversion, and therefore Repairer has no such claim against Owner.

## CONCLUSION

We reverse the district court's grant of summary judgment in favor of Repairer and remand with instructions to enter judgment in favor of Owner.

**IT IS SO ORDERED.**

MINZNER, C.J., and DONNELLY, J., concur.