896 P.2d 1156

**MAYFIELD SMITHSON ENTERPRIS-ES, a New Mexico general partnership, Plaintiff–Appellee,**

v.

**COM–QUIP, INC., a foreign corporation, Defendant–Appellant.**

No. 22323.

Supreme Court of New Mexico.

May 15, 1995.

Sherman & Sherman, P.C., Frederick H. Sherman, Deming, for appellant.

William F. Webber, P.A., William F. Webber, Las Cruces, for appellee.

## OPINION

MINZNER, Justice.

Defendant Com–Quip, Inc. (Com–Quip) appeals from a district court's decision granting Plaintiff Mayfield Smithson Enterprises (Mayfield Smithson) summary judgment on its complaint to quiet title. Com–Quip asserts on appeal that the trial court erred in rejecting its claim of a lien against the disputed real estate. Com–Quip also appeals from the trial court's decision granting Mayfield Smithson summary judgment on Com–Quip's counterclaims for conversion and unjust enrichment. We affirm the trial court's disposition of all claims and counterclaims.

Com–Quip has advanced various alternative theories on appeal. Essentially, these theories fall into two groupings—those relating to claims against real property and those relating to claims against personal property. These theories share a common thread in that they all arise out of a debt owed to Com–Quip by Hol–Inns, Inc. (Hol–Inns), which is not a party to this appeal. Com–Quip's efforts notwithstanding, we conclude that none of its contentions has any merit. Com–Quip is in the unfortunate position of a creditor whose debtor is bankrupt. Com–Quip's attempts to resurrect extinct obligations lack support in both the record and applicable case law.

## FACTS

In 1966 Hazel and Ernest Terry (the Terrys) entered into a written lease contract, as lessors, with Southwest Inns, Ltd., predecessor-in-interest of Hol–Inns, for a term of sixty-five years. Under the provisions of this agreement, the lessees agreed to build and operate a motel on the Terrys' property and to invest at least $100,000 of their own money above the sums to be borrowed for construction. The lease contract also provided that the Terrys would execute a mortgage on the property in order to enable the lessees to obtain a construction loan. Southwest Inns assigned its rights under the contract to Hol–Inns, and in 1971 the Terrys and Hol–Inns, as co-mortgagors, executed a mortgage against the property to secure an $800,000 construction debt.[1] Construction was completed in 1972, and Hol–Inns continued to operate the motel until it filed bankruptcy in 1988.

In September 1983 Hol–Inns executed a written lease agreement with Defendant–Appellant Com–Quip, a communications leasing firm, whereby Hol–Inns obtained the use of motel communications equipment for a term of seven years. An express provision of this agreement granted to Com–Quip "a lien on the real estate" where the equipment was installed. Pursuant to that contract, Com–Quip installed communications equipment throughout the motel that had been built on the leasehold property. Com–Quip recorded the lien shortly after executing the lease, but the Terrys were unaware of either the equipment lease or the lien that it purported to create until after Hol–Inns filed for bankruptcy in 1988.

Almost immediately after its installation, Hol–Inns began to experience technical problems with the communications equipment. In July 1984 Hol–Inns notified Com–Quip of its intention to terminate the equipment lease, and in November 1985 Com–Quip picked up most of the equipment. Com–Quip then brought a breach of contract action against Hol–Inns in the state district court in Deming. In September 1988, following a bench trial, the trial court concluded that

Hol–Inns had breached the equipment lease contract and entered judgment in favor of Com–Quip for $54,430. Two months later Com–Quip filed a transcript of this judgment with the Luna County Clerk.

Com–Quip's attempts to execute its judgment against Hol–Inns apparently forced the latter into bankruptcy. Hol–Inns filed a bankruptcy petition on December 8, 1988, one day after the sheriff levied against selected items of Hol–Inns' personal property. During the pendency of the bankruptcy proceedings, the Terrys sought to have the lease rejected so that they could acquire the hotel. After receiving assurances from the Terrys' attorney, the precise nature of which is in dispute, Com–Quip joined the Terrys in their efforts to get the leasehold terminated. In June 1990 the Bankruptcy Court for the District of New Mexico "rejected" the lease that arose out of the 1966 contract between the Terrys and Hol–Inns' predecessors. This rejection had the effect of terminating the lease and vesting all of the property's legal and equitable interests in the Terrys. The Terrys subsequently conveyed the property to Mayfield Smithson Enterprises. Bobby Mayfield (Mayfield) is an officer and shareholder in Mayfield Smithson, and he and his partner William Webber (Webber) served as counsel to the Terrys during the Hol–Inns bankruptcy.

## DISCUSSION

### A. *The Claims of Lien Against the Real Property*

Com–Quip sets forth two alternative theories to support its claim that it has a lien against the motel property that Mayfield Smithson purchased from the Terrys. Com–Quip asserts that a lien arose directly against the Terrys' fee interest as a result of provisions in the 1966 contract between the Terrys and Hol–Inns' predecessors. Alternatively, Com–Quip argues that a lien encumbered the Hol–Inns' leasehold interest and survived Hol–Inns' bankruptcy to encumber the Terrys' and eventually Mayfield Smithson's property interests. Before considering

---

1. In 1972 the original mortgagees released the 1971 mortgage; Hol–Inns re-mortgaged the property. The Terrys did not join the 1972 mortgage.

each of these theories, we address as a preliminary matter Com–Quip's assertion that the principle of equitable estoppel bars Mayfield Smithson from denying the existence of a lien.

### 1. *Com–Quip's Equitable Estoppel Argument*

■ Com–Quip argues that the trial court committed error when it rejected Com–Quip's affirmative defense of equitable estoppel. In support of this position, Com–Quip asserts that it received and relied upon the representations of the Terrys' attorney, Webber. According to Com–Quip, Webber stated that Com–Quip's lien would be "protected" if Com–Quip joined in the Terrys' efforts to get the lease rejected. In its response to Mayfield Smithson's motion for summary judgment, Com–Quip made the following argument to the trial court on this matter:

> [A]s is reflected in the Affidavit of Bob McAnally and the corresponding letters from Sherman and Webber, it is clear that a logical adversarial situation between Terrys and Com–Quip that would arise out of Terrys [sic] attempts to terminate the lease and then attempt to circumvent Com–Quips [sic] liens was transformed into a cooperative arrangement where Webbers [sic] represented that Com–Quip's liens would be paid. Webbers [sic] used Com–Quip's liens in their efforts to try to terminate the lease of Hol–Inns. ... Plaintiff should be estopped to claim the benefits of their representations, to get cooperation for [sic] Com–Quip and then turn around and deny what they previously took advantage of....

(Citations omitted.) Com–Quip makes a similar argument on appeal.[2]

■ The essential elements of equitable estoppel are (1) knowing misrepresentation or concealment of a material fact or facts; (2) made by the party to be estopped with the intention or expectation that the other party will act thereon; and (3) detrimental reliance without knowledge of the true facts by the party asserting estoppel. *Capo v. Century Life Ins. Co.*, 94 N.M. 373, 377, 610 P.2d 1202, 1206 (1980). A party moving for summary judgment has the burden of demonstrating that no genuine issue of material fact exists regarding affirmative defenses set forth by the non-moving party. *See Fidelity Nat'l Bank v. Tommy L. Goff, Inc.*, 92 N.M. 106, 108, 583 P.2d 470, 472 (1978). Once the moving party has made a prima facie showing of entitlement to summary judgment, however, the non-moving party has the burden of showing that a question of fact exists regarding each element of an affirmative defense. *Id.* Generalized conclusory allegations without factual support in the record will not meet this burden. *See Galef v. Buena Vista Dairy*, 117 N.M. 701, 706, 875 P.2d 1132, 1137 (Ct.App.1994).

After considering Com–Quip's arguments and the record before us, we cannot say that the trial court's rejection of Com–Quip's equitable estoppel defense was error. Com–Quip did not indicate to the trial court what fact or facts were misrepresented nor what words or representations constituted the alleged misrepresentation. Nor did Com–Quip specify what actions on its part amounted to reliance. As discussed in the remainder of this opinion, we conclude that Mayfield Smithson made a prima facie showing of entitlement to summary judgment. *Cf. Ruiz v. Garcia*, 115 N.M. 269, 272, 850 P.2d 972, 975 (1993) (stating that once movant makes prima facie showing of entitlement to summary judgment, burden shifts to non-movant to demonstrate a triable issue of fact). Because Com–Quip's vague allegations failed to show the existence of questions of fact regarding each element of equitable estoppel, summary judgment was proper. *See Galef*, 117 N.M. at 706, 875 P.2d at 1137.

---

2. Neither Mayfield, Webber, nor the Terrys are parties to this lawsuit. Mayfield is an officer and shareholder in Mayfield Smithson Enterprises, which is a party. Com–Quip assumes without argument that Webber's representations should work an estoppel against a corporation in which his partner owns an interest. We need not address an issue that was neither raised nor briefed. We note in passing, however, that it is "[a] basic proposition of corporate law ... that a corporation will ordinarily be treated as a legal entity separate from its shareholders." *Scott v. AZL Resources, Inc.*, 107 N.M. 118, 121, 753 P.2d 897, 900 (1988).

■ We also reject Com–Quip's argument that Webber and Mayfield owed it a fiduciary duty. In *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 106 N.M. 757, 761, 750 P.2d 118, 122 (1988), we said that an attorney owes no duty to an adverse party of his client. Com–Quip concedes that during the bankruptcy its interests were adverse to those of the Terrys. Com–Quip argues, however, that this adversarial relationship evolved into a cooperative relationship that gave rise to a fiduciary duty. Adverse parties frequently cooperate with one another in order to resolve legal disputes. We do not agree with Com–Quip that such cooperation should give rise to a duty that, as we said in *Garcia*, ordinarily does not exist. Accordingly, we hold that neither Webber nor Mayfield owed Com–Quip a fiduciary duty.

2. *Com–Quip's Argument that It Acquired a Lien Against the Terrys' Fee Interest by Virtue of the 1966 Lease Contract Between the Terrys and the Predecessors of Hol–Inns*

■ Com–Quip argues that, pursuant to the provisions of the 1966 lease contract, its lien against Hol–Inns' property automatically gave rise to a lien against the Terrys' fee interest in the disputed real estate. Com–Quip asserts that the lien against Hol–Inns arose out of either the statutory judgment lien statute, NMSA 1978, § 39–1–6 (Repl. Pamp.1991), or the express terms of the 1983 equipment lease agreement between Hol–Inns and Com–Quip.[3] We do not decide whether Com–Quip held a lien against Hol–Inns under either of these theories because we conclude that a lien against Hol–Inns' property did not give rise to a lien against the Terrys' property.

In essence, Com–Quip argues that the framers of the 1966 lease contract intended that a lien against Hol–Inns' property automatically would give rise to a lien against the Terrys' fee interest, regardless of whether the Terrys had knowledge of the lien or acquiesced in its creation. Com–Quip suggests that the 1972 mortgage by Hol–Inns,

which the Terrys did not join, demonstrates that the 1966 agreement permitted Hol–Inns to encumber the property unilaterally. After independently reviewing the 1966 lease contract, *see Verchinski v. Klein*, 105 N.M. 336, 338, 732 P.2d 863, 865 (1987), we conclude that Com–Quip misreads that agreement. It is true that the 1966 contract required the Terrys to execute a mortgage in favor of Hol–Inns' creditors in order to facilitate construction of the motel. However, this would not occur automatically; rather, the Terrys were required to execute a mortgage in accordance with certain procedures specified in the contract. It is undisputed that the Terrys never executed a mortgage in favor of Com–Quip and in fact were unaware of Com–Quip's claim against Hol–Inns until after the latter filed bankruptcy in 1988.

In order to support its position on this point, Com–Quip ignores established principles of contract interpretation. In New Mexico it is almost axiomatic that "[a] contract must be construed as a harmonious whole, and every word or phrase must be given meaning and significance according to its importance in the context of the whole contract." *Bank of New Mexico v. Sholer*, 102 N.M. 78, 79, 691 P.2d 465, 466 (1984). Com–Quip violates this principle by quoting selected provisions in isolation and out of context; the error of its methodology is apparent from the inconsistency and surplusage to which it gives rise.

For example, Com–Quip quotes the following sentence from paragraph six of the 1966 contract: "The mortgages securing such loan are intended to include not only the real estate mortgage but any loan for which a security agreement is given on the furniture, fixtures or equipment to be installed in the motel." Com–Quip argues that this sentence constitutes an express agreement "that Security Agreements were to be Liens against the real property" of the Terrys. Such an interpretation is plausible only when the sentence is taken out of context. An examination of paragraph six in its entirety reveals

---

3. A provision in the 1983 equipment lease agreement provided: "As further security to [Com–Quip, Hol–Inns] hereby grants [Com–Quip] a lien on the real estate located at the address in para-

graph 1, herein and agrees that this lien will be prior and senior to any lien or encumbrance granted or increased after this date."

that this clause imposes upon Hol–Inns the requirement to invest $100,000 of its own money above the amount borrowed to build, equip, and furnish the motel, and grants the Terrys the opportunity to inspect Hol–Inns' books to insure that such an investment actually occurs. When read in the context of the entire paragraph, the phrase "mortgages securing such loan" obviously refers not to mortgages given by the Terrys, but rather mortgages given by Hol–Inns. This is apparent from the sentence immediately preceding the one quoted, which refers to "all sums which [the Lessee] borrows." We conclude that the parties intended paragraph six to protect the Terrys by ensuring that Hol–Inns retained $100,000 equity, and thus Com–Quip's interpretation of that paragraph lacks merit.

Com–Quip's interpretation of portions of paragraph twenty-two is likewise incongruous with other contract provisions. Paragraph twenty-two gives to the Terrys the right to terminate the lease contract and reenter the premises. That provision specifies that in such an event the Terrys would be entitled to possession of the buildings, its furnishings and fixtures, "subject only to any valid security agreement which may have been executed on the furniture or other personal property, and subject to any real estate mortgage which [Hol–Inns] has executed in accordance with the requirements contained herein." Com–Quip quotes this passage and asserts that it constitutes an "express agreement[ ] . . . allowing Hol–Inns to encumber the real property." Com–Quip's interpretation seems to disregard the phrase "in accordance with the requirements herein." We understand this provision to clarify that, upon reentry, personalty is subject to liens against that personalty and realty is subject to liens executed pursuant to the express "requirements" of the contract. It is undisputed that Com–Quip's purported lien did

not satisfy these "requirements," which are specified at paragraphs six through nine and which include, among other things, the express assent of the Terrys.

The final problem with Com–Quip's interpretation of the 1966 contract is that it makes great portions of that agreement surplusage. Paragraphs seven, eight, and nine outline the Terrys' obligation to execute a mortgage to secure long-term financing. For example, paragraph seven provides: "The Lessors . . . hereby agree that they will . . . execute a real estate mortgage on the above described premises. . . ." If, as Com–Quip argues, the framers of the contract intended Hol–Inns to be able unilaterally to encumber the Terrys' property, this provision and much of paragraphs eight and nine would be pointless. *Cf. Castle v. McKnight,* 116 N.M. 595, 598–99, 866 P.2d 323, 326–27 (1993) (declining to interpret a contract provision in a manner that would divest another provision of all "practical meaning").

For all of these reasons, we hold that a lien against the disputed realty in favor of Com–Quip did not arise by virtue of any provision of the 1966 contract.

3. *Com–Quip's Argument that It Acquired a Lien Against Hol–Inns' Interest in the Leasehold and that the Lien Survived the Bankruptcy Proceedings*

■ As an alternative to the theory that it acquired a lien pursuant to the 1966 contract, Com–Quip asserts that a lien encumbered Hol–Inns' interest in the leasehold [4] and continued to encumber the property after the bankruptcy court terminated the leasehold. According to this alternative lien theory, Mayfield Smithson purchased the motel from the Terrys subject to such a lien. Com–Quip asserts that this lien against Hol–Inns' leasehold originated from one or more of the following sources: (1) the express terms of

---

4. The parties dispute whether a leasehold is personalty or realty. The significance of this issue comes from the fact that both the judgment lien statute and the lien provision in the 1983 equipment lease agreement apply only to real estate. Prior to 1991, leaseholds were considered to be personalty, *Western Sav. & Loan Ass'n v. CFS Portales Ethanol I, Ltd.,* 107 N.M. 143, 144, 754 P.2d 520, 521 (1988), but in 1991, the legislature amended the statutory definition of "real estate" to encompass leaseholds, *see* 1991 N.M.Laws, ch. 234, § 3 (codified at NMSA 1978, § 47–1–1 (Repl.Pamp.1991)). In light of our determination that bankruptcy extinguished any liens that may have encumbered the Hol–Inns leasehold, we need not decide whether this leasehold is properly characterized as personalty or realty.

the 1983 equipment lease agreement between Com–Quip and Hol–Inns; (2) the judgment lien statute,[5] § 39–1–6; or (3) the sheriff's levy against Hol–Inns' leasehold. We need not decide whether Com–Quip had a lien against Hol–Inns' leasehold interest because even if there was such a lien, it did not survive Hol–Inns' bankruptcy.

Upon Hol–Inns' filing of the bankruptcy petition, its leasehold interest became part of the bankruptcy estate, regardless of whether that leasehold was encumbered by a lien in favor of Com–Quip. *See* 11 U.S.C. § 541(a)(1) (1988); *A. Dan Chisholm, Inc. v. B.P. Oil, Inc. (In re A. Dan Chisholm)*, 57 B.R. 718, 720 (Bankr.M.D.Fla.1986) (holding that under the provisions of 11 U.S.C. § 541, "[t]here is no question that debtor's [commercial leasehold] interest ... became part of the ... estate" as of the filing of the bankruptcy petition); *cf. In re DeSantis*, 66 B.R. 998, 1002 (Bankr.E.D.Pa.1986) (noting in that district property of the bankruptcy estate includes even a bare possessory interest in a terminated leasehold). In an order dated June 7, 1990, the bankruptcy court directed the bankruptcy trustee to "immediately surrender [to the Terrys] all rights in the nonresidential real property and permanent improvements which are subjects of the Terry groundlease." While it is nowhere stated in the briefs or the record, we presume that the bankruptcy court ordered this rejection pursuant to its authority under 11 U.S.C. § 365 (1988). Courts that have considered the effect of rejection under § 365 have held that rejection terminates[6] the lease and obligates the bankruptcy trustee to surrender all property rights to the lessor. *See, e.g., Baker v. Harris Pine Mills (In re Harris Pine Mills)*, 862 F.2d 217, 218 n. 2 (9th Cir.1988); *In re Gillis*, 92 B.R. 461, 465 (Bankr.D.Haw.1988).

Because the bankruptcy court's rejection surrendered all property rights to the lessor, it logically follows that there was an extinguishment of the leasehold and any liens encumbering that leasehold. The extinction of the property against which a lien applies serves to extinguish the lien. As stated by the court in *United States v. Salerno*, 222 F.Supp. 664, 668–69 (D.Nev.1963), *modified on other grounds by Mutual Life Insurance Co. of New York v. United States*, 343 F.2d 71, 73–74 (9th Cir.1965), a lien

> continues in existence only so long as the property charged continues in existence, and the lien dies with the destruction of the property against which it is a charge.... [T]he value of the lien as security may be destroyed or diminished by payment, discharge in bankruptcy, or other event, just as surely as the value of a lien on a horse may be nullified by the death of the horse.

*See also Swanson v. Graham*, 27 Wash.2d 590, 179 P.2d 288, 293 (1947); 3 Richard R. Powell, *Powell on Real Property* ¶ 461, at 37–287 (Patrick J. Rohan, rev. ed. 1994). We

---

5. That statute provides, in pertinent part: "The [money judgment rendered by any state court] shall be a lien on the real estate of the judgment debtor from the date of the filing of the transcript of the judgment in the office of the county clerk of the county in which the real estate is situate." Section 39–1–6.

6. There is disagreement among the federal circuits about whether rejection of a lease pursuant to 11 U.S.C. § 365 serves to terminate the lease. Nonetheless, under any view, the result would be the same as that which we reach today. We are aware of no case holding that rejection of a lease pursuant to 11 U.S.C. § 365 serves to convert a lien against the lessee's leasehold into a lien against the interest that the lessor obtains from rejection. The case that comes the closest to the result urged by Com–Quip is *Eastover Bank for Savings v. Sowashee Venture (In re Austin Development Co.)*, 19 F.3d 1077 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 201, 130 L.Ed.2d 132 (1994). The facts and procedure of that case are, however, quite distinct from this case. Unlike this case, in which the bankruptcy court rejected the lease following an adversarial proceeding, the lease in *Austin* was "deemed rejected" pursuant to § 365(d)(4) without the benefit of an adversarial proceeding. 19 F.3d at 1083. Moreover, the creditor in *Austin* was a third-party beneficiary to the lease contract who had rights against the lessor prior to bankruptcy. *Id.* at 1080. In contrast, we have determined that Com–Quip is not a third-party beneficiary of the 1966 lease contract and that it had no rights against the Terrys prior to Hol–Inns' filing bankruptcy. The Fifth Circuit determined that the creditor retained its rights against the lessor despite the deemed rejection, *id.* at 1084; it did not say that rejection converted a lien against the lessee's leasehold into a lien against the lessor's fee interest.

hold that any lien that Com–Quip may have had against the leasehold ended with the bankruptcy court's rejection of the lease and termination of the leasehold.

## B. *The Personal Property Claims*

### 1. *Conversion*

 Com–Quip argues that it has title to the wiring that was installed in the motel in 1983. This claim of ownership formed the basis for Com–Quip's counterclaims of conversion and unjust enrichment. Because we find that Mayfield Smithson has made an unrefuted showing that there is no issue of fact regarding an essential element of the claim of conversion, we affirm the trial court's grant of summary judgment. Summary judgment is appropriate when a defendant negates an essential element of the plaintiff's case by demonstrating the absence of an issue of fact regarding that element. *See Goradia v. Hahn Co.*, 111 N.M. 779, 781, 810 P.2d 798, 800 (1991). *Cf. Blauwkamp v. University of N.M. Hosp.*, 114 N.M. 228, 231, 836 P.2d 1249, 1252 (Ct.App.) (holding that defendants in a medical malpractice action had negated at least one of the essential elements of the plaintiffs' claim, but also holding that plaintiffs' response indicated the existence of material issues of fact), *cert. denied*, 114 N.M. 82, 835 P.2d 80 (1992).

 Com–Quip does not allege that a conversion occurred as a result of Mayfield Smithson's wrongful taking of the wiring; rather, Com–Quip bases its claim upon Mayfield Smithson's allegedly wrongful retention of the wiring. Under such circumstances, demand for return of the property and refusal of the demand are essential elements of a conversion claim. *See Taylor v. McBee*, 78 N.M. 503, 506, 433 P.2d 88, 91 (Ct.App.1967); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 15, at 99 (5th ed. 1984). It is undisputed that no such demand was ever made prior to Com–Quip's filing of its counterclaim for conversion.

In an affidavit submitted in support of a November 1992 motion for summary judgment, Mayfield, in his capacity as a Mayfield Smithson officer, stated that Com–Quip had not made any demand for the return of the wiring or any other property. Although Com–Quip's response did not dispute this contention, the court denied summary judgment. Both parties later renewed their motions for summary judgment, and in its second motion, Mayfield Smithson again attacked the conversion claim on the ground, inter alia, that there had been no demand. In its counter-motion and response, Com–Quip submitted an affidavit wherein one of its corporate officers stated that "request is made for the return of all such equipment including the telephones and wiring which have continued to be used." This affidavit, dated December 28, 1993, apparently constitutes Com–Quip's only demand for return of the property. In our view, this affidavit is inadequate to raise a question of fact on the demand issue. We hold that an action for conversion requires that the plaintiff make a demand for return of the property prior to filing the complaint, not twenty-one months later when the plaintiff faces, for the second time, a motion for summary judgment. *See Nosker v. Trinity Land Co.*, 107 N.M. 333, 339, 757 P.2d 803, 809 (Ct.App.), *cert. denied*, 107 N.M. 267, 755 P.2d 605 (1988).

### 2. *Unjust Enrichment*

 Finally, Com–Quip argues that Mayfield Smithson's retention of the wiring results in unjust enrichment. We note that the facts of this case are somewhat analogous to those of a case recently decided by our Court of Appeals. In *Tom Growney Equipment, Inc. v. Ansley*, 119 N.M. 110, 113, 888 P.2d 992, 995 (Ct.App.1994), *cert. denied*, 119 N.M. 168, 889 P.2d 203 (1995), the Court held that a theory of unjust enrichment would not permit the repairer of a vehicle to recover when the vehicle owner neither ordered nor consented to the repairs. The court noted that "[w]here the defendant has a right to choose for himself whether to receive a benefit, and where restitution would deprive him of this choice by requiring payment for a 'benefit' the defendant may not want, restitution is often denied." *Id.* at 112, 888 P.2d at 994 (quoting 1 Dan B. Dobbs, *Dobbs Law of Remedies* § 4.9(2), at 683 (2d ed. 1993)). In the instant case it is undisputed that Mayfield Smithson did not consent to or order the installation of the wiring in the motel. In

fact, the wiring was installed approximately seven years prior to Mayfield Smithson's purchase of the property. Moreover, Mayfield Smithson has submitted an unrefuted affidavit that indicates that the wiring is obsolete and that its cost of removal would exceed its salvage value. We cannot say that Mayfield Smithson's retention of the wiring under these circumstances would constitute unjust enrichment. *Cf. Tom Growney Equip., Inc.,* 119 N.M. at 113, 888 P.2d at 995 (holding that automobile owner would not be enriched unjustly if he did not pay for repairs that he did not order or approve).

## CONCLUSION

We conclude that there are no disputed issues of material fact and that the trial court properly granted summary judgment in favor of Mayfield Smithson on all claims and counterclaims. Mayfield Smithson is entitled to quiet title in the disputed motel property.

**IT IS SO ORDERED.**

RANSOM and FRANCHINI, JJ., concur.