3 P.3d 695

2000-NMCA-051

**ONTIVEROS INSULATION CO., INC., and Rawson, Inc. Builders Supply, Cross Claimants–Appellees,**

v.

**Ricardo M. SANCHEZ, Geraldine Sanchez, and Nancy Bustamante, Cross Defendants–Appellants.**

No. 19,817.

Court of Appeals of New Mexico.

May 15, 2000.

Lee E. Peters, Hubert & Hernandez, P.A., Las Cruces, for Appellees.

Paul A. Bleicher, Albuquerque, for Appellants.

## OPINION

ARMIJO, Judge.

{1} Ricardo and Geraldine Sanchez and Nancy Bustamante (Homeowners) appeal from an adverse judgment of the district court which found them liable to Ontiveros Insulation Co., Inc. and Rawson, Inc. Builders Supply (collectively, Subcontractors) for a sum of $13,321.61, plus costs and prejudgment interest. This appeal requires us to review a grant of equitable relief, that is, a subcontractor's claim of unjust enrichment against a property owner for whom it provided labor and materials, but with whom it was not in privity of contract. The facts are not in dispute. For the reasons discussed below, we affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} The district court entered judgment upon the parties' stipulated facts. Homeowners each contracted with William C. Parker, the general contractor, for the construction of their respective homes. The original contracts specified that the Sanchezes would pay $63,000 and Bustamante would pay $73,000 for the completed homes. The stipulated facts do not indicate whether this price was to include the cost of land. Parker purchased building materials, which included doors and windows, from Rawson and hired Ontiveros to install insulation and a heating system. Subcontractors furnished the services and materials as contracted, and the parties agree that, as a result, value was added to the homes.

{3} Unfortunately for all involved, Parker, the general contractor, declared bankruptcy prior to completing construction of the homes, but after Subcontractors had provided the labor and materials. At the time of bankruptcy, Parker had finished some portion of the work, although the extent to which the homes stood completed is not indicated in the record. Also, at this point in time, the Sanchezes had paid Parker $26,000, or approximately 41% of the original contract price, and Bustamante had paid him $45,000, or approximately 62% of her original contract price. The record does not indicate that Homeowners intended any portion of these amounts to compensate Subcontractors for the labor and materials. Parker failed to pay Subcontractors any amounts for their labor and materials.

{4} Upon Parker's default, Homeowners completed their homes by other means. Completion of each home ultimately cost the Sanchezes $125,456 and Bustamante $120,851, including the cost of purchasing the land. The post-construction appraisal of the Sanchez and Bustamante homes ultimately exceeded the actual costs of construction by approximately $19,000 and $20,000, respectively. While the stipulated facts do not indicate the pre-construction appraised value of Bustamante's home, such that any comparison can be made, the post-construction appraised value of the Sanchezes' home was $14,000 greater than the pre-construction appraisal.

{5} Seeking what they saw as their due, Subcontractors filed liens on the homes. Before they could enforce these liens, however, Homeowners defaulted on their mortgages and the mortgagor foreclosed on the properties. Homeowners subsequently exercised their rights of redemption and reclaimed the properties free and clear of any liens. Subcontractors also sought relief from Parker; however, their claims were discharged in Parker's bankruptcy. Neither the foreclosure and redemption, nor the bankruptcy actions, are directly implicated in the present appeal.

{6} Finally, Subcontractors sued Homeowners directly, claiming that Homeowners had been unjustly enriched by the uncompensated value which the labor and materials added to the homes. The district court en-

tered judgment in Homeowners' favor, concluding that they had paid more than their original contract price for the homes and, therefore, had not been enriched.

*The Prior Appeal*

{7} Subcontractors appealed the district court's judgment to this Court, which reversed and remanded on its summary calendar. In reversing, this Court ruled that the trial court was required to consider the homes' post-construction appraisal values in its consideration of whether or not Homeowners were unjustly enriched. The matter was remanded for this determination. *See Ontiveros Insulation Co. v. Sanchez*, No. 18,-625 (N.M.Ct.App. Oct. 19, 1997). On remand, and upon consideration of the post-construction appraised value of Homeowners' homes, the district court entered judgment in Subcontractors' favor. Homeowners now appeal.

*Standard of Review*

{8} Before turning to the substance of the present appeal, we address the parties' disagreement as to the procedural stance of this appeal and the applicable standard of review. Homeowners urge us to review the district court's ruling as based upon summary judgment. Subcontractors, on the other hand, argue that the district court entered its judgment on the merits. This dispute ultimately concerns which party bears the benefit of any inferences to be drawn from the stipulated facts. Upon an appeal challenging summary judgment, we construe reasonable inferences from the record in an appellant's favor. *See Rummel v. St. Paul Surplus Lines Ins. Co.*, 1997-NMSC–042, ¶ 9, 123 N.M. 767, 945 P.2d 985. On appeals from judgments on the merits, we construe the record in favor of affirmance, giving the prevailing party the benefit of all reasonable inferences. *See Zemke v. Zemke*, 116 N.M. 114, 118, 860 P.2d 756, 760 (Ct.App.1993).

{9} We have carefully reviewed the record. While the matter came before the district court upon the parties' cross-motions for summary judgment, judgment was entered, as the district court made clear in its preface to the written judgment, "on the merits." We, therefore, construe all inferences in favor of affirming the judgment below. Finally, as this appeal requires us to review the district court's exercise of its equitable powers, we will reverse only upon a showing that the court abused its discretion. *See Amkco, Ltd., Co. v. Welborn*, 1999-NMCA–108, ¶ 13, 127 N.M. 587, 985 P.2d 757 ("On appeal, we review a decision of the trial court granting or denying equitable relief for abuse of discretion."), *cert. granted*, 128 N.M. 150, 990 P.2d 824 (1999).

*The Present Appeal*

{10} We now turn to the question presented: Are Homeowners entitled to prevail on their claim that any enrichment was not "unjust?" Homeowners argue that where a subcontractor seeks relief directly from the property owner with whom it has had no contact, it is virtually impossible for any claimed enrichment to be found "unjust." Subcontractors acknowledge that there is a paucity of New Mexico case law factually supportive of their position in this case; nonetheless, they contend that as is always the focus in equity, the only facts that matter are those here presented. *See, e.g.*, J.R. Kemper, Annotation, *Building and Construction Contracts: Right of Subcontractor who has Dealt only with Primary Contractor to Recover Against Property Owner in Quasi Contract*, 62 A.L.R.3d 288, 293 (1975) (emphasizing such cases turn upon application of the law to "the facts and circumstances of a given case").

{11} New Mexico has long recognized actions for unjust enrichment, that is, in quantum meruit or assumpsit. *See Tom Growney Equip., Inc. v. Ansley*, 119 N.M. 110, 112, 888 P.2d 992, 994 (Ct.App.1994). To prevail on such a claim, one must show that: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust. *See generally* Restatement of the Law of Restitution §§ 1, 40, 41 (1937, as supplemented through 1988). The theory has evolved largely to provide relief where, in the absence of privity, a

party cannot claim relief in contract and instead must seek refuge in equity. *See Tom Growney Equip., Inc.,* 119 N.M. at 112, 888 P.2d at 994; *see also Hydro Conduit Corp. v. Kemble,* 110 N.M. 173, 175, 793 P.2d 855, 857 (1990) ("This quasi-contractual obligation is created by the courts for reasons of justice and equity, notwithstanding the lack of any *contractual* relationship between the parties." (citation and internal quotation marks omitted.))

{12}   Subcontractors' suits against property owners are generally not favored. *See id.* at 176, 793 P.2d at 858; *see also George M. Morris Constr. Co. v. Four Seasons Motor Inn, Inc.,* 90 N.M. 654, 656–57, 567 P.2d 965, 967–68 (1977) (disapproving of subcontractor's personal action against property owner upon facts presented). *But see United States ex rel. Sunworks Div. of Sun Collector Corp. v. Insurance Co. of N. Am.,* 695 F.2d 455, 458 (10th Cir.1982) (recognizing subcontractor's right, under New Mexico law, to claim unjust enrichment against property owner in present context). Remedy is instead viewed as best sought from the underlying general contractor. This general disfavor, however, is not required by anything intrinsic to the subcontractor-property owner relationship, but rather is a reflection of the jurisprudence of equity. Simply, equity does not take the place of remedies at law, it augments them; in this regard, an action in contract would be preferred to one in quasi-contract. *See Sims v. Sims,* 1996–NMSC–078, ¶ 29, 122 N.M. 618, 930 P.2d 153.

{13}   We decline, however, to apply this traditional reticence regarding consideration of equitable relief in the present context. To do so would ignore the basic foundation of equity. As the Missouri Court of Appeals has framed the issue:

Equity is reluctant to permit a wrong to be suffered without remedy. It seeks to do justice and is not bound by strict common law rules or the absence of precedents. It looks to the substance rather than the form. It will not sanction an unconscionable result merely because it may have been brought about by means which simulate legality. And once rightfully possessed of a case it will not relinquish it short of doing complete justice. It weighs the equities between the parties and adopts various devices to protect against unjust enrichment.

*Merrick v. Stephens,* 337 S.W.2d 713, 719(Mo.Ct.App.1960) (footnotes omitted), *quoted in Ortiz v. Lane,* 92 N.M. 513, 519, 590 P.2d 1168, 1174 (Ct.App.1979) (Hernandez, J., specially concurring); *cf. Hydro Conduit Corp.,* 110 N.M. at 179, 793 P.2d at 861 (" 'Quasi-contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. *They are obligations created by law for reasons of justice.'* " (Emphasis added.) (quoting Restatement Law of Contracts § 5 cmt. a (1932)). Accordingly, rather than shying from application of equitable principles in the present case, we inquire more closely as to the particular equities of this specific matter.

{14}   The parties agree that the labor and materials added value to the properties. It is axiomatic, however, that courts provide remedy in quantum meruit to prevent *unjust* enrichment. To prove their claim, therefore, it would not be enough that Homeowners were merely enriched at Subcontractors' expense: That enrichment must also be unjust. The well-founded cautionary rules Homeowners invoke are specific iterations of this basic principle. As a general matter, the limitations are premised on the bedrock principle that it makes little sense to remedy one wrong by inflicting another. *See Tom Growney Equip., Inc.,* 119 N.M. at 113, 888 P.2d at 995.

{15}   The question before us, therefore, is whether the district court abused its discretion in *not* determining that Subcontractors' action failed because of one of the limitations upon actions for unjust enrichment which Homeowners assert. Homeowners argue, first, that they have paid to the general contractor a substantial portion of the original contract price and that they should not, therefore, be required to pay any further amount. Second, they argue that they did not request or know of the furnished work or materials and should not, therefore,

be liable. We are not persuaded by either argument.

{16} As to the payments Homeowners previously remitted to the now-bankrupt general contractor, Homeowners emphasize that they, respectively, paid the general contractor 42% and 61% on the underlying contracts. They note these payments as evidence of their having paid a substantial amount on the original contract, such that providing relief to Subcontractors would be error. We do not agree.

{17} Where a property owner pays to the general contractor "a very substantial part" of the monies due and owing, the subcontractor does not generally have an equitable claim for relief against the property owner. *Sundance Mechanical & Util. Corp. v. Atlas,* 118 N.M. 250, 255, 880 P.2d 861, 866 (1994); *see also Hydro Conduit Corp.,* 110 N.M. at 175, 793 P.2d at 857. Such payment makes reasonable the presumption that the property owner has already paid for the conferred benefit. *See Hydro Conduit Corp.,* 110 N.M. at 175, 793 P.2d at 857. It follows, then, that if a defendant has already *paid* for the benefit, there has been no enrichment, much less *unjust* enrichment. As such, this limitation upon the action is consistent with the basic rule.

{18} However, we find no abuse of discretion in the district court's implied finding that 42% and 61% payments—or, to aggregate, payments totaling 52%—on the underlying contracts are not "very substantial." *Cf. Sundance Mechanical & Util. Corp.,* 118 N.M. at 253, 255, 880 P.2d at 864, 866 (noting payments of 85% on underlying contract as "a substantial portion thereof"). First, as the stipulated record does not indicate what portion of the work remained unfinished upon the general contractor's default, we cannot tell what relation an aggregate payment of 52% on the original contracts bears to what services and materials the general contractor and Subcontractors had provided. The stipulated record does indicate, however, that Subcontractors received *no* compensation for the approximately $14,000 in work and materials they provided-work which the parties agree—added value to the homes. Moreover, it is clear that, in the aggregate,

Homeowners never paid $65,000 out of $136,000 agreed upon in the original contract, but that their homes are now appraised, again in the aggregate, at $40,000 more than they expended. Given the state of the stipulated record, we cannot conclude that it was contrary to logic and reason for the district court's *refusal* to conclude that Homeowners had already paid for the services and materials Subcontractors had provided.

{19} In so concluding, we recognize that Homeowners each paid another contractor to have the homes finished. We also note that each spent more than they had originally contracted for with the now-bankrupt general contractor. However, it is not indicated in the record whether the original contract prices included the costs of purchasing the land or not; as such, these amounts cannot be confidently construed as parallel. More importantly, the question here raised is whether Homeowners paid to the *general contractor* a very substantial part of the original contract price. *See Hydro Conduit Corp.,* 110 N.M. at 176, 793 P.2d at 858. That they hired others to finish the work begun and abandoned does not of itself suggest that Homeowners have already paid for Subcontractors' labor and materials. Upon the standard of review applicable, the district court did not abuse its discretion by concluding that Homeowners did not pay for the benefit conferred upon them.

{20} As to their claimed lack of request or knowledge, Homeowners claim they had no specific knowledge of Parker's hiring of Subcontractors or of purchasing materials. *See Tom Growney Equip., Inc.,* 119 N.M. at 113, 888 P.2d at 995. However, this is of little concern. While Homeowners may not have known the specifics of Parker's arrangement with the subcontractors, it would make little sense—certainly not at the prices of the homes at issue—for Homeowners to have contracted for homes to be built without heating systems, insulation, doors, and windows. In this regard, we conclude that the district court did not abuse its discretion in determining on the stipulated facts that Homeowners should have known such services and materials would be provid-

ed. *See generally* Restatement, *supra*, § 40(c) (noting liability where defendant "knew *or had reason to know*" of benefit conferred (emphasis added)); *cf. Murdock–Bryant Constr., Inc. v. Pearson*, 146 Ariz. 48, 703 P.2d 1197, 1203 (1985) (en banc) ("What is important is that it be shown that it was not intended or expected that the services be rendered or the benefit conferred gratuitously, and that the benefit was not conferred officiously." (Internal quotation marks omitted.)).

{21} Finally, we note that while the record discloses no reason why any party should bear the blame for Parker's bankruptcy, abandonment of the underlying construction contract, or failure to pay Subcontractors, the equities weigh heavily in Subcontractors' favor. Among these considerations, the subcontractors pursued all possible remedies before turning to the present action. Indeed, but for Homeowners' mortgage defaults and the resulting foreclosure and redemption, Subcontractors could claim an adequate remedy at law without resort to equity. Conversely, by virtue of the foreclosure actions, Homeowners redeemed the properties free and clear of any liens and now live in homes appraised at $19,000 and $21,000 more than expended. As to the work and materials for which Subcontractors now seek compensation, this turn of events has inured directly to their disadvantage and Homeowners' advantage. In light of this record, the district court did not abuse its discretion in providing equitable relief to Subcontractors.

{22} In so holding, we wish to emphasize that recovery on such an action may not be had in every instance where a subcontractor has furnished labor or materials which benefit a third person with whom there is no privity of contract. Our decision today is limited to affirming the propriety of quasi contract as a remedy in a particular factual situation. Each case must be decided according to the essential elements of quasi contract. The most significant requirement for a subcontractor's successful recovery is that the enrichment be unjust. In the present case, Subcontractors exhausted their remedies against the person with whom they contracted, namely, Parker. Despite those efforts, they did not receive any value for the labor and services rendered. Although Homeowners paid over sums of money to Parker, Homeowners were never specifically put on notice that their payments to Parker, or any portion thereof, were intended to pay for the labor and materials furnished to the residences.

## CONCLUSION

{23} Construing all reasonable inferences from the stipulated facts in Subcontractors' favor, we find in the district court's ruling no abuse of discretion. The judgment of the district court is affirmed.

{24} **IT IS SO ORDERED.**

BOSSON and WECHSLER, JJ., concur.