2003-NMCA-010

62 P.3d 339

The CREDIT INSTITUTE, a California corporation d/b/a Attorney's Business Services, Plaintiff–Appellee,

v.

VETERINARY NUTRITION CORPORATION, a New Mexico corporation, Defendant–Appellant.

No. 22,255.

Court of Appeals of New Mexico.

Nov. 27, 2002.

D. Lyle Wood, D. Lyle Wood, P.C. Las Cruces, NM, for Appellee.

Jeffrey M. Croasdell, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, NM, for Appellant.

*OPINION*

ROBINSON, Judge.

{1} In this appeal, we address whether the trial court may sua sponte award equitable relief to a party on the basis of unjust enrichment in an action based solely on express contract under Article 2 of the Uniform Commercial Code, NMSA 1978, §§ 55-2-101 to –725 (1961, as amended through 2001) (the UCC). We hold that the trial court erred in awarding restitution to Plaintiff where Defendant did not have actual notice of the theory of unjust enrichment, did not consent to the trial of the issue, and did not have a fair opportunity to defend against such a claim. We reject Plaintiff's contention that the trial court found partial acceptance of the goods by Defendant under Article 2 of the UCC. We further hold that the trial court erred in awarding attorney fees to Plaintiff. We therefore reverse the trial court's judgment.

*FACTUAL AND PROCEDURAL BACKGROUND*

{2} In September 1999, Defendant Veterinary Nutrition Corporation (Buyer) ordered labels for its dog food products from Capitol Litho, a printing company (Seller). The purchase order set forth the quantity, price, and description of the labels that Buyer wanted to buy from Seller. Specifically, Buyer sought 20,000 labels from Seller for the price of $7,976. Each label was to be 19 ¼" by 36 ¼ " in size. The labels were to be printed in black, burgundy, and gold.

{3} At Seller's request, Buyer also signed and completed a New Account Application form. The application included the following language: "Applicant agrees to pay amounts owed [Seller] within 30 days of the date of the invoice and any indebtedness not paid when due shall bear interest at the maximum legal rate. Applicant promises to pay reasonable attorney fees if it is necessary to retain the services of an attorney to collect any indebtedness owed [Seller] by applicant."

{4} Seller and Buyer exchanged proofs of the labels. Buyer did not at any time request changes to either the size or the color of the labels as stated in the purchase order. Without sending a final color match to Buyer or receiving Buyer's final approval on any proof, Seller proceeded to print up labels for Buyer. Seller delivered 20,000 labels to Buyer on September 29, 1999.

{5} Neither the color nor the size of the labels matched the description of the labels in the purchase order. In particular, the labels were not burgundy, but pink. The labels also did not have the measurements stated in the purchase order and did not fit Buyer's dog food boxes.

{6} After the delivery, Buyer promptly contacted Seller by phone and informed it that the labels did not conform to the purchase order and requested that the labels be picked up by Seller. On October 5, 1999, Buyer sent a letter to Seller rejecting the labels. Seller instructed Buyer to use the defective labels until it could remedy the problem. In accordance with Seller's instructions, Buyer used approximately 4,000 to 4,500 of the defective labels it received from Seller. To make use of the labels, however, Buyer had to cut or modify the labels and its dog food boxes. Buyer also had to obtain new boxes in order to use the nonconforming labels, and ultimately switched to packaging its dog food in bags instead of boxes.

{7} Seller never retrieved the labels from Buyer and did not redress any of the problems with the labels. Instead, Seller continued to bill Buyer for the full price of the contract, including interest. Seller eventually turned the matter over to Plaintiff The Credit Institute, a collection agency, for collection.

{8} The complaint alleged two counts against Buyer based on the express contract between Buyer and Seller: one for money allegedly due on an open account and the other for money allegedly due on accounts stated. Buyer filed an answer to the complaint, denying that it had an open account with Seller and asserting the affirmative defense that the goods delivered by Seller were defective and nonconforming to the contract,

that Buyer timely notified Seller of the defect and nonconformance with the contract and attempted to return the goods, but that Seller refused to accept return of the goods. Plaintiff later filed an amended complaint, adding factual allegations concerning the New Account Application signed by Buyer. No answer to the amended complaint was ever filed.

{9} Following a trial on the merits, the trial court found that Seller delivered goods to Buyer that were defective and nonconforming to the contract, that Buyer timely notified Seller of its rejection of the goods, and that Seller refused to accept the return of the goods. However, the trial court further found that Buyer was "enriched" to the extent that it had used 4,500 of the 20,000 labels. Based upon that finding, the trial court sua sponte awarded restitution to Plaintiff in the amount of $2,051.63, plus interest, attorney fees, and costs, for a total judgment of $3,476.57. This was the first time restitution or unjust enrichment had ever been mentioned in these proceedings.

{10} Buyer timely moved to amend the judgment, arguing that although the trial court properly denied Plaintiff legal relief, it improperly granted Plaintiff equitable relief where Plaintiff did not request such relief in its complaint, did not argue the theory of unjust enrichment at trial, and did not seek to amend its complaint to conform to the evidence. Buyer further argued that the award of restitution was improper where there was no evidence that its use of the nonconforming labels was unjust. Plaintiff filed a response opposing the motion and requesting that the complaint be amended to conform to the evidence. The motion to amend the judgment was deemed denied by operation of law. This appeal followed.

## DISCUSSION

### Preservation

{11} Initially, we address whether Buyer's claims on appeal were properly preserved for review. Plaintiff argues that Buyer waived its right to challenge the trial court's decision because it (1) did not file an answer to the amended complaint, and (2) did not submit requested findings of fact and conclusions of law following the trial. We conclude that Buyer's claims of error were adequately preserved for review.

■ {12} First, we reject Plaintiff's claim that Buyer's failure to file an answer to the amended complaint amounted to waiver. The amended complaint differs from the original complaint in only one respect: paragraph five of the amended complaint refers to and incorporates the New Account Application which is attached to the amended complaint as Exhibit B. In all other respects, the amended complaint is identical to the original complaint.

{13} As noted above, Buyer filed an amended answer to the original complaint. By not filing a separate answer to the amended complaint, Buyer, at most, admitted only the new factual allegations contained in paragraph five of the amended complaint. *See* Rule 1–008(D) NMRA 2002 ("Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading."). There is no reason to believe, however, that Buyer renounced any of the denials or affirmative defenses set forth in its answer to the original complaint. Most importantly, those affirmative defenses were actually litigated by the parties at trial which supersedes the pleadings preceding trial. *See* Rule 1–015(B) NMRA 2002. Because the amended complaint did not add any new claims or legal theories, and Buyer's answer to the original complaint included affirmative defenses that were actually litigated by the parties, we conclude that Buyer's failure to file a second amended answer cannot be deemed to be a waiver of its claims on appeal. *See* Rule 1–015(B) NMRA 2002.

■ {14} Second, we conclude that Buyer's failure to tender requested findings and conclusions does not preclude appellate review. As Buyer points out in its reply brief, it is not contesting the trial court's findings of fact or seeking a review of the evidence on appeal. Instead, it is challenging only the trial court's legal conclusions that Plaintiff is entitled to equitable relief and attorney fees. Although the failure to request findings and conclusions may bar sufficiency of the evi-

dence review, we "may still review the trial court's decision to determine whether it is legally correct, and whether it is supported by findings of fact, if any, made by the trial court." *Blea v. Sandoval*, 107 N.M. 554, 556–57, 761 P.2d 432, 434–35 (Ct.App.1988).

{15} In any event, we conclude that Buyer sufficiently alerted the trial court's attention to the issues raised on appeal in its motion to amend the judgment. Within ten days after the entry of the trial court's judgment, Buyer filed a motion to amend the judgment specifically challenging the trial court's award of restitution and attorney fees to Plaintiff on the same grounds advanced on appeal. Rule 1–052(D) NMRA 2002 provides: "Upon motion of a party made not later than ten (10) days after entry of judgment, the court may amend its findings or conclusions or make additional findings and conclusions and may amend the judgment accordingly." Thus, although Buyer waived requested findings and conclusions following trial, it preserved its claims on appeal in its motion to amend the judgment. *See Cockrell v. Cockrell*, 117 N.M. 321, 322, 324, 871 P.2d 977, 978, 980 (1994) (clarifying that a request for findings is not the only means of preserving error and recognizing that motion to amend under Rule 1–052 is sufficient to call trial court's attention to error); *Martinez v. Martinez*, 101 N.M. 88, 93, 678 P.2d 1163, 1168 (1984) (observing that although appellant failed to request specific conclusion of law on attorney fees, appellate court could still review issue for error because appellant moved to reconsider trial court's decision on that issue, and trial court thus had an opportunity to consider the issue); we therefore turn to the merits of those claims.

### Award of Equitable Relief

{16} Buyer argues that the trial court improperly awarded restitution to Plaintiff where such relief was not requested in the complaint, and the theory of unjust enrichment was not argued by Plaintiff at trial. Buyer also argues that the award of restitution to Plaintiff was improper where there was no evidence or specific finding by the trial court that Buyer's enrichment was "unjust." Because we agree with Buyer's first argument, we need not address its second contention.

{17} We review the trial court's grant of equitable relief under an abuse of discretion standard. *Nearburg v. Yates Petroleum Corp.*, 1997–NMCA–069, ¶ 32, 123 N.M. 526, 943 P.2d 560. "An abuse of discretion will be found when the trial court's decision is clearly untenable or contrary to logic and reason." *Newsome v. Farer*, 103 N.M. 415, 420, 708 P.2d 327, 332 (1985). "Although the decision of whether equitable relief should be granted is within the sound discretion of the trial court, '[s]uch discretion is not a mental discretion to be exercised as one pleases, but is a legal discretion to be exercised in conformity with the law.'" *Nearburg*, 1997–NMCA–069, ¶ 32, 123 N.M. 526, 943 P.2d 560 (quoting *Cont'l Potash, Inc. v. Freeport–McMoran, Inc.*, 115 N.M. 690, 697, 858 P.2d 66, 73 (1993)).

{18} Because this action involves a contract for the sale of goods, both parties agree that it is governed by Article 2 of the UCC. The parties, however, disagree on whether the trial court actually determined that Seller breached the sales contract between the parties. We conclude that the trial court, in finding that Seller delivered goods to Buyer that were defective and nonconforming to the contract, necessarily found that Seller breached the terms of the contract. *See Deaton, Inc. v. Aeroglide Corp.*, 99 N.M. 253, 256, 657 P.2d 109, 112 (1982) (recognizing that defective and nonconforming goods are basis for claim of breach of warranty in contract). We assume, for purposes of this opinion, that under Article 2 of the UCC, a seller, who breaches the contract by delivering nonconforming goods to the buyer, may nonetheless assert a claim of restitution against the buyer when the buyer uses the goods to its benefit even though it may have rejected the goods. *See* 1 James J. White & Robert S. Summers, Uniform Commercial Code § 8–3, at 322–23 (5th ed.2000) (explaining that pursuant to the law of restitution, incorporated in the Uniform Commercial Code, a breaching seller is entitled to payment for any benefit conferred on a buyer who has used the goods); NMSA 1978, § 55–

1–103 (1961) (stating that unless displaced by particular provisions of the UCC, the principles of law and equity shall supplement the UCC).

{19} Even assuming that the remedy of restitution would have been available to Plaintiff, we conclude that the trial court erred in awarding restitution to Plaintiff. Generally, the trial court "may not grant judgment for relief which is neither requested by the pleadings nor within the theory on which the case was tried." *Leonard Farms v. Carlsbad Riverside Terrace Apartments, Inc.*, 90 N.M. 34, 36, 559 P.2d 411, 413 (1977). "The theory of pleadings is to give the parties fair notice of the claims and defenses against them, and the grounds upon which they are based." *Schmitz v. Smentowski*, 109 N.M. 386, 389, 785 P.2d 726, 729 (1990).

{20} In this case, neither the original nor the amended complaint set forth adequate facts to put Buyer on notice that Plaintiff was asserting a claim of unjust enrichment. Plaintiff argues that the prayers for relief in the complaint request "such other amount" and "such other and further relief as the Court may deem appropriate", and thus encompass a claim for equitable relief. Our review of the allegations in the amended complaint reveals, however, that Plaintiff sought recovery solely on the theories of open account, account stated, and breach of contract—all express contract theories.

{21} A claim for restitution is distinct from a contract claim. It is rooted in principles of quasi-contract or quantum meruit, and its principal objective is to prevent unjust enrichment. *Tom Growney Equip., Inc. v. Ansley*, 119 N.M. 110, 112, 888 P.2d 992, 994 (Ct.App.1994). As alleged in the pleadings, the facts did not put Buyer on notice that restitution and unjust enrichment were part of the theories alleged in the complaint. To prevail on a claim for unjust enrichment, "one must show that: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." *Ontiveros Insulation Co. v. Sanchez*, 2000–NMCA–051, ¶ 11, 129 N.M. 200, 3 P.3d 695. In this case, the trial court awarded restitution to Plaintiff based upon its find-

ing that Buyer used 4,500 of the 20,000 defective labels shipped by Seller. The amended complaint, however, contains no allegations concerning Buyer's receipt or use of the labels, or the benefit conferred on it.

{22} Although our liberal rules of notice pleading do not require that specific evidentiary detail be alleged in the complaint, *see Petty v. Bank of N.M. Holding Co.*, 109 N.M. 524, 526, 787 P.2d 443, 445 (1990), we believe that at least some factual predicate for unjust enrichment must be set forth in the complaint to give Buyer fair notice of the claim. *See Electro–Jet Tool & Mfg. Co. v. City of Albuquerque*, 114 N.M. 676, 685, 845 P.2d 770, 779 (1992); *cf. Cooper v. Chevron U.S.A., Inc.*, 2002–NMSC–020, ¶ 9, 132 N.M. 382, 49 P.3d 61 (concluding that reference to injunctive relief in the conclusion of the complaint was not enough to determine that complaint involved an actual claim for injunctive relief). Because not even the barest factual basis was alleged in this case, we conclude that the theory of unjust enrichment was not raised by the pleadings.

{23} The deficiency in the complaint, however, does not resolve this appeal. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 111 N.M. 6, 9, 800 P.2d 1063, 1066 (1990). Our rules of civil procedure acknowledge that, under certain circumstances, recovery may be had on grounds not specifically asserted in the pleadings. In particular, Rule 1–015(B) provides:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues....

In addition, Rule 1–054(C) NMRA 2002 provides: "[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in [his] pleadings." *Accord State ex rel. Newsome v. Alarid*, 90 N.M. 790, 798–99, 568 P.2d 1236, 1244–45

(1977)(internal quotation marks and citation omitted).

{24} In *State ex rel. Gary v. Fireman's Fund Indem. Co.*, 67 N.M. 360, 365, 355 P.2d 291, 294–95 (1960), our Supreme Court, applying the principles underlying Rules 1–015(B) and –054(C), announced the rule "that recovery should be allowed on quantum meruit even though the suit was originally framed on express contract; and that amendment to pleadings be freely allowed to accomplish this purpose at any stage of the proceeding, including considering the pleadings amended to conform to the proof." The Supreme Court also affirmed its earlier decision, *Harbison v. Clark*, 59 N.M. 332, 336–37, 284 P.2d 219, 221 (1955), in which it held that if a case is tried without objection on the basis of quantum meruit, recovery may be had on such a theory even though the case was pled in express contract.

{25} Although these cases appear to recognize that recovery may be had on an unpled claim for unjust enrichment in a contract action, our Supreme Court has also underscored the need for notice to the opposing party, so that an opposing party may not be prejudiced by a late shift in the theory of the case. Due process still requires that the opposing party have notice and an opportunity to defend against the theory not stated in the pleadings. *See Farmers, Inc.*, 111 N.M. at 9, 800 P.2d at 1066; *Camp v. Bernalillo County Med. Ctr.*, 96 N.M. 611, 613, 633 P.2d 719, 721 (Ct.App.1981).

{26} In this case, Buyer had no reason to know that unjust enrichment was a theory to be covered at trial. First, there was no pretrial order defining the issues for trial or disclosing the parties' contentions. *See* Rule 1–016(E) NMRA 2002; *Fahrbach v. Diamond Shamrock, Inc.*, 1996–NMSC–063, 122 N.M. 543, 550, 928 P.2d 269, 276 ("A pretrial order narrows the issues for trial, reveals the parties' real contentions, and eliminates unfair surprise."). Second, at trial, Plaintiff's counsel waived both opening and closing statements and thus did not raise or argue the theory of unjust enrichment. It was never raised by the court until after trial. Third, had the issue of unjust enrichment actually been litigated, Plaintiff would have submitted requested findings and conclusions on the issue; however, it did not. Finally, Plaintiff did not move to amend the complaint to include a claim for unjust enrichment at any point prior to the entry of the final judgment. We conclude that, without anything to alert Buyer that the issue of unjust enrichment had entered the case at trial, Buyer could not have consented to the trial of the issue. *See* 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1491, at 7 (1990) ("An amendment will be allowed only if the parties have received actual notice of an unpleaded issue and have been given an adequate opportunity to cure any surprise that might result from the change in the pleadings.").

{27} Plaintiff asserts that this Court should affirm because Buyer did not object to the evidence upon which the trial court based its restitution award. *See White v. Wayne A. Lowdermilk, Inc.*, 85 N.M. 100, 101, 509 P.2d 575, 576 (Ct.App.1973) ("Issues tried without objections are tried with implied consent."). We disagree.

{28} Although the trial transcript reveals that it was Buyer, not Seller, who introduced the evidence upon which the trial court relied, it is plain that Buyer presented such testimony only to demonstrate that it had used the labels at Seller's instructions and to show that they did not conform to the contract and required substantial modification before use. The evidence, therefore, was relevant to Buyer's affirmative defenses of rejection and nonconformity and only coincidentally supported the theory of unjust enrichment. This Court has previously stated that where evidence admitted without objection is relevant to both a pled issue and an unpled issue, the unpled issue is not litigated under implied consent. *McKay v. Kimble*, 117 N.M. 258, 262, 871 P.2d 22, 26 (Ct.App. 1994); *see also Moya v. Fid. & Cas. Co.*, 75 N.M. 462, 465–66, 406 P.2d 173, 175–76 (1965) (recognizing there can be no implied consent where the parties do not squarely recognize the issue at trial). Thus, because Buyer could not have recognized that the issues of unjust enrichment and restitution had entered the case, we conclude that the issues

were not tried by the consent of the parties. *See Wynne v. Pino*, 78 N.M. 520, 522–23, 433 P.2d 499, 501–02 (1967).

{29} Finally, we conclude that Buyer was unfairly prejudiced by the change in theory of the case. The test for determining prejudice is whether the opposing party had a fair opportunity to defend against the claim and whether it could offer any additional evidence if the case were to be retried on a different theory. *Id.* at 523, 433 P.2d at 502.

{30} In this case, the trial court, by sua sponte awarding restitution to Plaintiff post-trial, deprived Buyer of the opportunity to present any legal or equitable defenses it may have had to an unjust enrichment claim. If Buyer had been aware of the claim, it may have wished to argue or present additional evidence that it was not *unjustly* enriched where it did not accept, want, or bargain for the defective labels that it received from Seller. *See Tom Growney*, 119 N.M. at 113, 888 P.2d at 995; 1 Dan B. Dobbs, Law of Remedies § 4.1(2), at 563 (2d ed.1993) (explaining that an award of restitution is inappropriate if it would interfere with defendant's autonomy and require it to pay for something it did not take, did not want, and did not bargain for). It also would have been entitled to introduce evidence to prove that it did not sustain a net benefit and that the amount of damages caused by Seller's breach was greater than the value of any benefit received. *See* 1 George E. Palmer, the Law of Restitution § 5.4, at 583–84 ("The defendant is unjustly enriched only to the extent of benefit received over harm suffered.").

{31} Ordinarily, the burden is on the *plaintiff* to prove that the damages suffered by the buyer are less than the benefit conferred on it. *Id.* Here, however, the trial court prevented Buyer from presenting any evidence concerning the amount of damages caused by the breach because Buyer was unaware of the need to do so. The court inappropriately relieved Plaintiff of its burden of proof at trial and awarded Plaintiff a straight percentage of the contract price based on the number of labels used without taking into account Buyer's incidental and consequential damages.

{32} Therefore, because the theory of unjust enrichment was not pled, argued, or tried by the parties, and Buyer did not have notice of the theory until the court entered judgment and he was unfairly prejudiced, we hold that the trial court erred in sua sponte awarding restitution to Plaintiff.

## Partial Acceptance

{33} Despite the trial court's express findings, Plaintiff argues that the trial court did not make an award of equitable relief to Plaintiff, but instead determined that Plaintiff made partial acceptance of the defective labels under Article 2 of the UCC. *See* § 55–2–601(c); § 55–2–606(1)(a). We are not persuaded by this argument.

{34} As noted above, the trial court specifically found (1) that the labels shipped by Seller were defective and nonconforming to the contract; (2) that Buyer timely notified Seller of the defect and nonconformance; and (3) that Seller refused to accept return of the defective goods. These unchallenged findings do not support any conclusion of partial acceptance. Rather, implicit in the findings is the determination that Buyer effectively rejected all the labels and that Seller refused to accept return of the goods. Where a buyer holds the goods for a time sufficient to permit a seller to remove them, and the seller refuses to do so, the buyer "has no further obligations with regard to goods rightfully rejected." Section 55–2–602(2)(b) & (c). Thus, Buyer's use of the labels in this case does not amount to acceptance. *See* § 55–2–601 Official Cmt. 2 (stating that "the buyer's attempts in good faith to dispose of defective goods where the seller has failed to give instructions within a reasonable time are not to be regarded as acceptance"); *White Sands Forest Prods., Inc. v. First Nat'l Bank*, 2002–NMCA–079, ¶ 11, 132 N.M. 453, 50 P.3d 202 (stating that official comments to the UCC are persuasive authority); *cf. Johannsen v. Minnesota Valley Ford Tractor Co., Inc.*, 304 N.W.2d 654, 658 (Minn.1981) (recognizing that revoking buyer's continued use of defective goods may be reasonable and does not necessarily constitute a waiver of his revocation of acceptance).

{35} Moreover, Section 55–2–606(1) provides that goods are accepted when the buyer (a) signifies to the seller that the goods are conforming or that he will take or retain them despite their nonconformity, (b) fails to make an effective rejection after having had a reasonable opportunity to inspect the goods, or (c) does any act inconsistent with the seller's ownership. *See also O'Shea v. Hatch*, 97 N.M. 409, 413, 640 P.2d 515, 520 (Ct.App.1982) (stating that a buyer of goods who, with full knowledge of their defect, makes further payments or performs acts of dominion or other acts inconsistent with the intention to rescind, may be deemed to have accepted the goods); *Oda Nursery, Inc. v. Garcia Tree & Lawn, Inc.*, 103 N.M. 438, 442, 708 P.2d 1039, 1043 (1985) (determining that buyer's "act of accepting and planting the delivered goods was clearly inconsistent with rejection or revocation of acceptance").

{36} In this case, Buyer did not affirmatively signify to Seller that it would take or retain the defective labels. Nor was Buyer's conduct inconsistent with its rejection. To the contrary, the undisputed evidence reveals that Buyer acted in accordance with Seller's instructions to use the defective labels until it could resolve the problem. Under these circumstances, Buyer's use of the labels cannot be deemed an "act inconsistent with the seller's ownership." Section 55–2–606(1)(c); *see also O'Shea*, 97 N.M. at 413–14, 640 P.2d at 519–20 (determining that buyer's act of having surgery performed on horse did not constitute acceptance of the horse where it was seller who suggested and consented to the operation on the horse); *cf.* § 55–2–603(1) (providing that under certain circumstances, "a merchant buyer is under a duty after rejection of goods in his possession or control to follow any reasonable instructions received from the seller with respect to the goods"). Therefore, neither the court's findings nor the undisputed evidence support a conclusion of partial acceptance.

{37} We also reject Plaintiff's suggestion that Buyer's use of the labels was an attempt to "cover" for the nonconforming goods. As Buyer points out, "cover" consists of "goods *not identical* with those involved but commercially usable as reasonable substitutes under the circumstances of the particular case." Section 55–2–712 Official Cmt. 2 (emphasis added). Thus, cover does not apply to the situation here where the buyer uses the nonconforming goods sent by the seller.

## Attorney Fees

{38} Finally, Buyer argues that the trial court erred in awarding attorney fees to Plaintiff. We review the trial court's award of attorney fees for an abuse of discretion. *Lenz v. Chalamidas*, 113 N.M. 17, 18, 821 P.2d 355, 356 (1991). "As a general rule, litigants are responsible for their own attorney fees absent statutory authority or some other authority such as a contract allowing such fees." *Springer Group, Inc. v. Wittelsohn*, 1999–NMCA–120, ¶ 23, 128 N.M. 36, 988 P.2d 1260.

{39} Because the trial court dismissed Plaintiff's open account claim on directed verdict, we find no statutory basis for the award of attorney fees in favor of Plaintiff. *See* NMSA 1978, § 39–2–2.1 (1975) (providing that prevailing party in an action on open account is entitled to recover reasonable attorney fees). We therefore look to the contract between the parties.

{40} According to the New Account Application signed by Buyer, it was required to pay Seller's reasonable attorney fees if Seller retained the services of an attorney "to collect any indebtedness owed" to Seller. The trial court, however, did not find that Buyer was "indebted" to Seller under the contract; it could not have, where it found that Seller was in breach of the contract and that Buyer properly rejected the defective goods. Therefore, the award of fees cannot have been based on the contract in this case. Moreover, Plaintiff is not entitled to fees solely by virtue of its status as prevailing party below. *See Schroeder v. Mem'l Med. Ctr.*, 1997–NMSC–046, ¶ 6, 123 N.M. 719, 945 P.2d 449. Therefore, we also reverse the trial court's award of attorney fees in favor of Plaintiff.

## CONCLUSION

{41} For the foregoing reasons, we reverse the judgment in favor of Plaintiff and re-

mand for entry of judgment in favor of Buyer.

{42} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, *Chief Judge, and* CYNTHIA A. FRY, *Judge.*