This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

EXCEL BUILDERS & DEVELOPERS, LLC,

Plaintiff-Appellee,

v.                                                      NO. 32,309

SEAN GABALDON,

Defendant-Appellant,

and

BRENDA PENNER-GABALDON,

Defendant.

APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY
George P. Eichwald, District Judge

Anthony J. Williams
Los Lunas, NM

for Appellee

Atkinson & Kelsey, P.A.
Denise E. Ready
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

{1} Defendant Sean Gabaldon (Sean) appeals the district court's judgment awarding damages to Excel Builders and Developers, LLC (Excel) against Sean for the reasonable repair and cleaning expenses of a home owned by Excel that was damaged while Sean's wife, Brenda Penner-Gabaldon (Brenda), occupied it under a rent-to-own agreement. We affirm.

**BACKGROUND**

{2} Prior to this dispute, Sean and Excel's primary owner, Daryl Cordova (Cordova), had been friends for about twenty years. Excel owned a newly constructed, unfinished home that it had built, but had not yet sold. Sean and Brenda were married with children, but were planning to divorce. In anticipation of the divorce settlement, Sean entered into an oral agreement with Excel to buy the home from Excel for Brenda and their children. However, because Sean needed time to finance the home, Sean and Excel agreed that Excel would finish the home and rent it to Brenda until Sean could secure financing. Sean agreed to pay the rent, and he agreed that if the purchase of the home fell through, he would "take care of damage to the home" and

"make sure the house was in perfect tip-top shape[.]" As a result of these oral agreements, Excel spent about $42,000 to finish the home—it installed doors, tile, carpet, paint, stucco, and "every finishing touch[,]" all of which Brenda had picked out. Brenda and the children lived in the home for about a year and a half, and Sean paid the rent during that time.

{3}     The only part of this oral agreement that was reduced to writing and signed by any of the parties was a "LEASE TO PURCHASE OPTION AGREEMENT" (Option Agreement), in which Excel granted Brenda an exclusive option to purchase the home within six months. Although this Option Agreement contained a statement that Excel and Brenda had "together executed a prior lease agreement," it did not include a copy of any prior lease agreement or recite any of its terms. And the Option Agreement required nothing of Brenda other than to follow certain procedures in the event she chose to exercise her option to purchase the home.

{4}     Although Sean eventually secured financing for the home, Brenda decided that she no longer wanted it. Neither Sean nor Brenda purchased the home, and Brenda and the children moved out. When Cordova later inspected the home,

> [i]t was totally wrecked. The walls were coloring boards for the kids. The weeds were taller than the home. . . . The carpets were totally stained out. They had red stains all over the place. . . . The windows were super-glued shut. There was stuff on the garage floor that . . . I couldn't get . . . off the concrete. It's like they left kids in there for a month by themselves, just a free-for-all to do whatever they wanted to. . . . [At

3

least one] door [was] pretty close to ruin. Excel had to replace the carpeting in "[e]very room[,]" some of the walls required "seven coats of paint" to cover the markings left on them, and on other walls, Excel "had to replace patches of sheetrock completely" because painting would not cover the damage. Excel incurred $9,222.16 in repair and cleaning expenses, plus $226.57 to remove a lien on the property resulting from Sean's and Brenda's failure to pay an alarm company for their "protection and monitoring agreement." Excel filed a complaint in the district court to recover these expenses.

{5}     Although Excel's complaint mainly pled a claim under the Uniform Owner-Resident Relations Act (UORRA), NMSA 1978, §§ 47-8-1 to -52 (1975, as amended through 2007), the gist of Excel's claim as it was litigated in the district court was that Sean orally agreed to: (1) buy the home, (2) have Excel rent it to Brenda until Sean could secure financing, (3) pay the rent during that time, and (4) make sure the home was left in good condition if the sale fell through. Excel maintained throughout the litigation that it was entitled to damages under the UORRA, which would have also entitled it to recover its reasonable attorney fees. *See* § 47-8-48(A).

{6}     After a bench trial on the merits, the district court adopted Excel's findings of fact and conclusions of law in almost all respects, including those concluding that Excel was entitled to damages under the UORRA. However, it declined to award

Excel its reasonable attorney fees under the UORRA. The district court entered judgment in favor of Excel and against Sean and Brenda jointly and severally for $9,448.73, which was the cost to repair the damage to the home and clear the lien.

{7}     Sean appeals, arguing that the district court erred in entering judgment against him because (1) he was not a "resident" under the UORRA and therefore not bound by its provisions; (2) Excel should not have been allowed to present evidence of an oral agreement because Excel did not "mention . . . an oral agreement in the [c]omplaint" and the Option Agreement was "unambiguous[,]" therefore "parol[] evidence should not have been allowed"; (3) there was insufficient evidence to support the district court's findings that Brenda acted as Sean's agent when she signed the Option Agreement; (4) there was insufficient evidence that Sean damaged or permitted others to damage the home in violation of Section 47-8-22 because he "never took possession or control over the residence"; and (5) the statute of frauds rendered Sean's oral agreements unenforceable.

**DISCUSSION**

**A.     Oral Agreements**

{8}     Sean first argues that he was not a resident under the UORRA because he "had absolutely no right to occupy the [home]." We need not address this argument because we conclude that the district court properly found that Sean breached an oral

agreement he made with Excel. The district court found and the trial record substantially supports the specific findings that (1) Sean agreed to take care of damage to the home if the sale fell through, (2) Excel rented the home to Brenda based upon Sean's agreement, (3) the sale of the home did not occur, and (4) the home was damaged and became subject to a lien during Brenda's occupancy. *See Camino Real Mobile Home Park P'ship v. Wolfe*, 1995-NMSC-013, ¶ 27, 119 N.M. 436, 891 P.2d 1190 (noting that a cause of action for breach of contract is established "by showing the existence of a contract, breach thereof, causation, and actual damage"), *overruled on other grounds by Sunnyland Farms, Inc. v. Cent. N.M. Elec. Coop., Inc.,* 2013-NMSC-017, ¶¶ 14-16, 301 P.3d 387. Sean does not dispute that he orally agreed to buy the home, that he arranged for Excel to rent the home to Brenda until he could obtain financing, that he paid the rent during that time, that he did not end up buying the home, or that $9,448.73 in damage occurred to the home while Brenda and the children lived there. Although Sean denies that he orally agreed to take care of damage to the home if the sale fell through, we defer to the district court's finding that he made such an oral agreement because it is supported by substantial evidence in the form of Cordova's trial testimony. *See Sunnyland Farms*, 2013-NMSC-017, ¶¶ 37, 39 ("When there is a conflict in the testimony, we defer to the trier of fact. . . . It is not error for a trial court to credit one [witness's] testimony over another's." (alteration,

6

internal quotation marks, and citation omitted)).

**B.      Oral Agreements Not Pled in Complaint**

{9}      Sean argues that the district court should not have admitted evidence of the oral agreements between Sean and Excel because Excel did not plead in its complaint that Sean was bound by any oral agreements. We disagree. New Mexico has a "longstanding commitment to . . . nontechnical fair notice requirements[.]" *Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 1, 335 P.3d 1243. "It is sufficient that defendants be given only a fair idea of the nature of the claim asserted against them sufficient to apprise them of the general basis of the claim[.] . . . The Rules of Civil Procedure disfavor looking upon pleadings as tests of skill where a single misstep could bar recovery." *Id.* ¶ 12 (alteration, internal quotation marks, and citations omitted). Furthermore, Rule 1-015(B) NMRA allows a party to recover based on issues not specifically asserted in the pleadings when such issues "are tried by express or implied consent of the parties[.]" *See Wynne v. Pino*, 1967-NMSC-254, ¶ 12, 78 N.M. 520, 433 P.2d 499 ("[I]f a material fact has been omitted from the pleadings, but the fact is litigated as if it had been put in issue by the pleadings, then it is the duty of the trial court to amend the complaint in aid of the judgment so as to allege the omitted fact.").

{10} We conclude that Excel's complaint sufficiently apprised Sean that Excel claimed that it was entitled to recover for damage to the home that occurred while Brenda and the children lived there and that this claim gave him a "fair idea" that litigation of the case would likely involve his oral discussions and agreements with Excel underlying the rental of the home to Brenda. *See Zamora*, 2014-NMSC-035, ¶ 12. Furthermore, the issue whether Sean breached an oral agreement to take care of damage to the home was fairly litigated by the parties, *see* Rule 1-015(B), and Sean does not claim that he was deprived of a fair opportunity to defend against it or that he could have offered additional evidence had the complaint specifically alleged that he breached an oral contract. *See Credit Inst. v. Veterinary Nutrition Corp.*, 2003-NMCA-010, ¶ 29, 133 N.M. 248, 62 P.3d 339 (stating that the test for determining whether an opposing party was unfairly prejudiced by a change in the theory of the case is whether that party "had a fair opportunity to defend against the claim and whether it could offer any additional evidence if the case were to be retried on a different theory").

**C.     Parol Evidence Outside of the Option Agreement**

{11} Sean also contends that the district court erred in allowing parol evidence outside of the four corners of the Option Agreement. Again, we are not persuaded. Contract interpretation is an issue of law that we review de novo. *Rivera v. Am. Gen.*

*Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 27, 150 N.M. 398, 259 P.3d 803; *see also Smith v. Maldonado*, 1985-NMSC-115, ¶ 9, 103 N.M. 570, 711 P.2d 15 (stating that appellate courts "are not bound by erroneous or unnecessary conclusions of law"). In construing a contract, we "apply the plain meaning of the contract language in order to give effect to the parties' agreement." *McMillan v. Allstate Indem. Co.*, 2004-NMSC-002, ¶ 10, 135 N.M. 17, 84 P.3d 65.

{12}     As we have noted, the plain language of the Option Agreement states that Excel "grant[ed]" Brenda "an exclusive option to purchase" the home within six months and laid out the procedures for exercising that option to purchase, nothing more. The Option Agreement had little, if any, relevance to the agreements surrounding rental of the home. Because the agreements surrounding rental of the home were oral, the district court properly admitted evidence of the oral discussions and agreements between the parties. *See generally Nellis v. Farmers Ins. Co. of Ariz.*, 2012-NMCA-020, ¶ 49, 272 P.3d 143 (noting that "New Mexico abandoned the strict plain meaning, four-corners approach to contract interpretation" and that even before that, "the parol evidence rule did not preclude the introduction of extrinsic evidence designed to determine the circumstances under which the parties contracted and the purpose of the contract" (internal quotation marks and citations omitted)). It is Sean's oral agreements regarding the rental of the home and payment for damages during this

rental period that give rise to Excel's oral contract claim against Sean.

**D.      Sufficiency of the Evidence**

{13}      Sean asserts that we should reverse the judgment because two of the district court's findings of fact were not supported by sufficient evidence: first, that Brenda acted as Sean's agent when she signed the Option Agreement; and second, that Sean damaged or permitted others to damage the home in violation of Section 47-8-22, even though he "never took possession or control over the residence." We disagree.

{14}      We need not review whether sufficient evidence supports these findings because these findings are not necessary to support the judgment. *See Normand ex rel. Normand v. Ray*, 1990-NMSC-006, ¶ 35, 109 N.M. 403, 785 P.2d 743 ("Findings of fact are to be liberally construed so as to uphold the judgment of the trial court[.] . . . Even where specific findings adopted by the trial court are shown to be erroneous, if they are unnecessary to support the judgment of the court and other valid material findings uphold the trial court's decision, the trial court's decision will not be overturned." (citation omitted)). Whether Brenda signed the Option Agreement as Sean's agent is irrelevant because we have concluded that the Option Agreement had little or nothing to do with the agreements surrounding rental of the home. And whether Sean allowed others to damage the home in violation of the UORRA is

irrelevant because we have concluded that the judgment is supported by reasons other than application of the UORRA. Neither of these findings contradict or invalidate Sean's oral agreement to pay Excel for any damages to the home resulting from the rental to Brenda.

**E.     Statute of Frauds**

{15}     Finally, we are not persuaded by Sean's argument that the statute of frauds renders his oral agreements unenforceable. "The provisions of the statute of frauds pertaining to realty do not of course apply to the disposition of property or rights which do not in fact constitute an *interest* in realty." 37 C.J.S. *Frauds, Statute of* § 65 (2008) (emphasis added). An "interest" is a "legal share in" property or a "legal or equitable *claim to or right in* property[.]" *Black's Law Dictionary* 934 (10th ed. 2014) (emphasis added). Although Sean's promise to "make sure the house was in perfect tip-top shape" if the purchase of the home fell through went along with the oral agreements to buy the home and rent it to Brenda until he could obtain financing, the promise to take care of damage was not a promise that had to do with a "legal share" in the house or a "claim to" or "right in" the house. *Id.*; *see also* 37 C.J.S. *Frauds, Statute of* § 65. Therefore, the statute of frauds does not apply to render unenforceable Sean's oral agreement to pay for any damages to the home, and we need not address Sean's argument concerning part-performance removing an oral contract from the

11

statute of frauds.

**CONCLUSION**

{16}    We affirm the district court's judgment.

{17}    **IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**LINDA M. VANZI, Judge**