This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**DANIEL W. COOK**,

    Petitioner-Appellant,

v.                         **NO. 31,419**

**WELLS FARGO BANK N.A.,**
**SUCCESSOR TO WELLS FARGO BANK**
**NEW MEXICO, N.A.**,

    Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alan Malott, District Judge**

Daniel W. Cook
Albuquerque, NM 87120

Pro Se Appellant

Sutin, Thayer & Browne, P.C.
Michelle K. Ostrye
Andrew J. Simons
Albuquerque, NM 87103

Jay D. Hertz
Albuquerque, NM 87111

for Appellee

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

**I.    INTRODUCTION**

{1}    In 1997, Hydroscope Group, Inc. (HGroup) borrowed over $1.5 million from Wells Fargo. Daniel Cook (Cook) is the president, CEO, and chairman of HGroup. HGroup defaulted on its debt to Wells Fargo. Cook entered into subsequent agreements with Wells Fargo, on behalf of HGroup, pledging additional collateral in order to persuade Wells Fargo to forbear from collecting on the debt. In 2003, an HGroup stockholder who was disgruntled with what he alleged was Cook's corporate mismanagement of HGroup, filed a derivative suit against Cook and other HGroup board members, and named Wells Fargo as an additional defendant because of its status as HGroup's creditor. Cook brought suit against Wells Fargo in 2005.  The cases were consolidated, and in 2009 the district court granted summary judgment for Wells Fargo, awarding judgment on the debt, granting foreclosure on collateral and the dismissal of all claims against it.

{2}    Cook appeals the district court's entry of nine different orders. Four of those orders deal with summary judgment: one attacks the judgment itself, one attacks Wells Fargo's motion for summary judgment, and two seek reassessment of the district court's orders denying attacks on the order granting Wells Fargo's summary judgment

motion. The remaining five orders deal with the district court's sanctioning of Cook's duplicative filing methods, which unnecessarily prolonged this litigation. After trudging through the procedural quagmire of this case, we join the list of courts that have ruled against Cook. Although Cook asserts the district court committed numerous errors, he repeatedly fails to adequately demonstrate any reversible error under applicable appellate standards. Thus, we affirm.

## II. BACKGROUND

{3}     The parties being aware of the facts and this being a memorandum opinion, we limit ourselves to a basic outline of the underlying debts and litigation, and present additional facts for each issue as necessary.

## A. Debts and Defaults

{4}     When HGroup entered into a credit agreement with Wells Fargo for a $1.5 million revolving credit line, it pledged various collateral to secure the loan.[1] In addition, Wells Fargo secured guarantees on that loan from Cook personally,

---

[1]The collateral pledged included a license for Hydroscope technology and intellectual property, a security interest in 2,500 shares of HGroup's stock in Hydroscope Inc., USA (HUSA), and a security interest in 1.5 million of Cooks' shares of stock in HGroup. In addition, HGroup gave Wells Fargo a security interest in its inventory, equipment, general intangibles, accounts, and other rights to payment.

Hydroscope Inc., USA (HUSA),[2] and four other companies.[3] Cook signed the credit agreement seven times: on behalf of the debtor company, the guaranteeing companies, and his personal guarantee. HGroup subsequently defaulted on the debt owed to Wells Fargo.

{5}     As a result of HGroup's default, HGroup pledged more collateral, this time promising IP and patents from another one of its wholly owned subsidiaries, Hydroscope Canada Inc. (HCAN). In exchange, Wells Fargo agreed to forbear from collecting on HGroup's debt for a time. HGroup again defaulted on its debts to Wells Fargo, and Wells Fargo again agreed to extend its forbearance. In this second forbearance agreement, HGroup and Cook conceded the validity of its debts, stipulated that Wells Fargo had breached no duty to them and had fully performed all its obligations, and released any claims they may have had against Wells Fargo. HGroup defaulted again, and Wells Fargo made no further agreements to forbear.

**B.     Litigation**

{6}     This litigation started in 2003 as a derivative suit against Cook and HGroup's board members. Wells Fargo, named as an additional defendant because of its status as HGroup's creditor, counterclaimed against HGroup, HUSA, and HCAN. In

---

[2]HUSA is a wholly owned subsidiary of HGroup.

[3]Cook signed guarantees on behalf of all four of these companies—Universal Infrastructure, Inc., U-Liner, Inc., American Liner, Inc. (Utah), and American Liner, Inc. (New Mexico)—as executive vice president.

4

October 2004, Cook filed for personal bankruptcy.[4] Cook brought suit against Wells Fargo in November 2005. In his complaint, Cook asserted four claims: (1) breach of contract; (2) misrepresentation; (3) aiding and abetting a breach of fiduciary duty; (4) violation of the Unfair Practices Act. The district court consolidated the two cases. CBM Group, Inc. (CBM)[5] was eventually joined as a party because it bought the patents in 2005 that HCAN pledged to Wells Fargo in 2002 as collateral in the forbearance agreement.[6]

## III.   DISCUSSION

{7}     In reviewing the nine orders that Cook appeals, we first analyze whether the district court properly granted summary judgment for Wells Fargo, as well as the orders associated with the summary judgment proceedings. Next, we address the district court's dismissal of Cook's "cross-complaint and counter claims" that he filed after the district court granted summary judgment. Finally, we look at a preliminary injunction, and orders enforcing that injunction, that the district court issued in response to Cook's vexatious litigation strategy.

---

[4]The intricacies involving Cook's bankruptcy in both the United States District Court and the Bankruptcy Court are beyond the scope of our review here. For the sake of brevity and clarity, we limit our mention of Cook's bankruptcy to the largest extent possible when discussing the issues before us.

[5]CBM is a company that Cook created in July, 2005.

[6] Cook signed this sale agreement as the chairman of the HCAN board and as a principal of CBM.

## A.     Summary Judgment

{8}     Wells Fargo filed a motion for summary judgment in December, 2006.  In its motion, Wells Fargo requested judgment against HGroup, HUSA, HCAN, and CBM allowing it to collect on its debts and foreclose on the collateral pledged by those entities.  Wells Fargo also requested the dismissal of all claims asserted against it, both in the derivative suit and in Cook's complaint. Wells Fargo's summary judgment motion specifically excluded Cook from its request for relief, and did not seek to recover on either Cook's personal liability for his personal loan[7] or his personal liability as guarantor securing HGroup's debt.[8]

{9}     The district court held several hearings on the motions.[9]  An automatic bankruptcy stay was in place during the first and second hearing because of Cook's personal bankruptcy. Accordingly, the district court declined to enter a written order on Wells Fargo's motion for summary judgment until the stay was lifted or

---

[7]Wells Fargo issued a personal loan to Cook for $975,000, secured by a mortgage on Cook's home, Cook's life insurance proceeds, and guaranteed by HGroup. This loan is unrelated to the issues before us.

[8]Although Wells Fargo's motion for summary judgment claims that the motion would be "expanded to include claims against Cook[] and assets of [his] bankruptcy estate" in the event that the bankruptcy stay is lifted, no such expansion was made to the district court or to this court. We therefore do not address it, and deal only with the motion as the district court saw and granted it.

[9]At all points during the summary judgment hearings below, HGroup, HUSA, HCAN (collectively Hydroscope entities), and CBM were represented by counsel.

terminated. It did, however, make oral rulings. During the first hearing, the district court expressed an intention to grant Wells Fargo's motion. The next hearing addressed the appropriate form the proposed orders would take. The corporate entities ultimately agreed with Wells Fargo on the form and content of both orders, but the district court again declined to issue an order on Wells Fargo's motion. After the second summary judgment hearing, the bankruptcy court annulled the automatic stay, allowing state court proceedings to take place with respect to "any property in which either the estate or the Debtors claim an interest." The bankruptcy court also modified the stay so that any party could seek, or continue to seek, whatever legal remedies it desired in state court.

{10} As a result of the bankruptcy court's annulment, Cook represented himself during the third hearing. The district court gave HGroup, HUSA, and HCAN (collectively, Hydroscope entities), as well as Cook, an opportunity to submit further briefing on Wells Fargo's summary judgment motion. In doing so, the district court reasoned that, although it was required to look to the pleadings in deciding the motion, Cook had filed no responsive pleading to the motion and the Hydroscope entities had only joined CBM's motions.

{11} Finally, during the last summary judgment hearing, at which Cook again represented himself, the district court concluded that no genuine issues of material fact

7

existed to preclude granting summary judgment for Wells Fargo. The district court reasoned that there was evidence that loans were made pursuant to an agreement to pay them back, and nothing disputed that repayment of the loans was due and were in default. It explained that "[t]he only defense that was presented . . . was whether there was consideration" for the first forbearance agreement. The district court concluded that there was no genuine issue of material fact as to the existence of debt and default thereon. In its written order granting summary judgment for Wells Fargo, entered the same day as the hearing, the district court awarded Wells Fargo judgment against HGroup,[10] HCAN,[11] HUSA,[12] and CBM.[13] It also dismissed all claims that Cook asserted against Wells Fargo.

**1.      Standard of Review**

---

[10]Wells Fargo was awarded the principal and interest due on both loans; foreclosure of its security interest in 2,500 shares of HUSA stock and Hgroup's inventory, equipment, and general intangibles; senior security interest in collateral; and attorney's fees.

[11]Wells Fargo was awarded foreclosure of HCAN's intellectual property and patents, excluding the patents which were part of the Cook bankruptcy estate; and attorney's fees.

[12]Wells Fargo was awarded foreclosure on its security interest in HUSA's inventory, equipment, and general intangibles; foreclosure on its security interest in HUSA's intellectual property; and attorney's fees.

[13]Wells Fargo was awarded judgment of foreclosure of its security interest in all intellectual property, including patents, acquired from HCAN; a senior security interest in said IP; and attorney's fees.

8

{12} Where, on appeal from the grant of summary judgment, no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review. *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Self v. United Parcel Service, Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. A genuine issue of fact "would allow a hypothetical fair-minded factfinder to return a verdict favorable to the non-movant on that particular issue." *Romero v. Philip Morris, Inc.*, 2009-NMCA-022, ¶ 12, 145 N.M. 658, 203 P.3d 873, *rev'd on other grounds by* 2010-NMSC-035, 148 N.M. 713, 242 P.3d 280. "The movant need only make a prima facie showing that he is entitled to summary judgment. Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Roth v. Thompson*, 1992-NMSC-011, ¶ 17, 113 N.M. 331, 825 P.2d 1241 (citation omitted).

{13} The non-moving party may not merely rely upon allegations or arguments, *Dow v. Chilili Coop. Ass'n*, 1986-NMSC-084, ¶ 13, 105 N.M. 52, 728 P.2d 462, but instead "must make an affirmative showing by affidavit or other admissible evidence." *Schwartzman v. Schwartzman Packing Co.*, 1983-NMSC-010, ¶ 22, 99 N.M. 436, 659 P.2d 888. Conclusions made in an affidavit and "unsupported by any factual basis"

in the record are not sufficient to raise issues of material fact. *Portales Nat. Bank v. Bellin*, 1982-NMCA-092, ¶ 19, 98 N.M. 113, 645 P.2d 986; *see Mayfield Smithson Enterprises v. Com-Quip, Inc.*, 1995-NMSC-034, ¶ 9, 120 N.M. 9, 896, P.2d 1156 (stating that "[g]eneralized conclusory allegations without factual support in the record" are insufficient).

{14} "Where an opposing party does not deny or controvert facts stated in a movant's affidavit, the facts may be deemed to be admitted for the purpose of the court's ruling upon such matter." *Rios v. Danuser Mach. Co., Inc.*, 1990-NMCA-031, ¶ 16, 110 N.M. 87,792 P.2d 419. Although summary judgment may not be entered solely on the ground that the nonmovant failed to respond to the motion for summary judgment, where the court holds a hearing, at which the nonmovant is allowed to present arguments, and the district court then makes a determination on the undisputed material facts, summary judgment is proper. *See Varga v. Ferrell*, 2014-NMCA-005, ¶¶ 33-34, ___P.3d. ___.

**2.      The District Court Properly Dismissed Cook's Claims**

**a.      The Summary Judgment Proceedings were not Against Cook as an Individual**

{15}      Cook's personal liability, whether as a guarantor of HGroup's debt to Wells Fargo or as debtor of his personal loan, is not at issue in the case before us.  In its

10

motion for summary judgment, Wells Fargo did not seek a judgment against Cook or his bankruptcy estate. As emphasized in the order granting summary judgment, Wells Fargo sought only to collect on the debts owed by HGroup, foreclose on collateral pledged by the corporate entities, and dismiss all claims against it. In fact, the only part of the order that affects Cook is the dismissal of the four claims against Wells Fargo that he brought in his complaint.

{16} Cook's claims—purportedly brought on behalf of the Hydroscope entities—include breach of contract, misrepresentation, aiding and abetting a breach of fiduciary duty, and violation of the Unfair Practices Act. Although the record is somewhat unclear as to who owns the Hydroscope entities' claims, we find some support for the position that either Cook or his bankruptcy estate owned the claims and defenses that the Hydroscope entities had against Wells Fargo. It appears HGroup and its subsidiaries assigned their interest in claims and causes of action against Wells Fargo to Cook in February 2005. However, in reviewing the record we also find clear evidence that the corporate entities presented extensive legal

arguments throughout the summary judgment proceedings, including those supporting the claims that Cook brought in his complaint. Filings made in the district court on behalf of the corporate entities were signed by counsel, and counsel made arguments on behalf of the corporate entities during hearings.

11

{17} We do not address whether Cook properly attempted to litigate these claims on behalf of the corporate entities. *See Chisholm v. Rueckhaus*, 1997-NMCA-112, ¶¶ 5-6, 124 N.M. 255, 948 P.2d 707 (establishing rule that a non-attorney may not represent another person in a legal proceeding and that a corporation can appear in court only by an attorney at law); *see also Martinez v. Roscoe*, 2001-NMCA-083, ¶¶ 3-15, 131 N.M. 137, 33 P.3d 887 (holding that artificial legal entities require legal representation by a licensed attorney); *cf. Lee v. Catron*, 2009-NMCA-018, ¶¶ 3, 5, 145 N.M. 573, 203 P.3d 104 (stating rule that "[w]here one is acting as a fiduciary for the benefit of others, he may not represent arguments to a court pro se[,]" and holding that trustee of trust engaged in unauthorized practice of law when he represented the trust pro se). Assuming arguendo that Cook's claims, which the district court dismissed in summary judgment, belonged to Cook, were properly litigated by him below,[14] and are properly

---

[14]The district court initially gave Cook the opportunity to submit responsive motions to Wells Fargo's motion for summary judgment, without the district court making any determinations as to Cook's standing. The district court then decided

litigated by him in this court,[15] the district court's grant of summary judgment was still proper. The reason for this conclusion is two-fold: all of HGroup's and Cook's claims, counterclaims, and defenses against Wells Fargo were relinquished in the second forbearance agreement, which was not disputed, and Cook failed to point to any genuine issues of material fact which preclude summary judgment for Wells Fargo as a matter of law.

**b.    HGroup and Cook Released their Right to Sue Wells Fargo in Exchange for Wells Fargo's Forbearance**

{18}    In its motion for summary judgment, Wells Fargo asserted that all claims against it—including those Cook brought in his complaint—are barred by release, ratification, and novation.  We agree with regard to release.

**i.    Terms of the Second Forbearance Agreement**

{19}    Wells Fargo's motion states, and Cook did not ever dispute,  as an undisputed material fact, that in September 2002, HGroup and Cook entered into a second forbearance agreement.   The clear terms of the second forbearance agreement

Cook did not have standing, because the bankruptcy trustee owned Cook's claims against Wells Fargo.  The trustee did not object to the district court granting summary judgment for Well Fargo.  Regardless of this ruling, the district court continued to allow Cook to continue to appear in court and submit filings.

[15]Since the summary judgment proceedings, the trustee has abandoned all property interests in Cook's bankruptcy estate, resulting in the return of Cook's claims against Wells Fargo. *See Abo Land Co. v. Tenorio*, 1920-NMSC-053, ¶ 4, 26 N.M. 258, 191 P.141 (stating that upon abandonment of title by the trustee, property reverts back to the bankrupt).

acknowledge that HGroup had defaulted on its debt to Wells Fargo. The agreement also contains a section entitled "release of prior claims[]" in which Cook and HGroup confirm the validity of the first forbearance agreement and state that Wells Fargo fully performed all duties "that it may have had, had, or now has" to Cook and HGroup. Most importantly, the second forbearance agreement releases Wells Fargo from any claims, counterclaims, and defenses which Cook and HGroup could bring against Wells Fargo.[16]

**ii.      The Second Forbearance Agreement's Release of Claims is a Valid Release**

{20}      Under the clear language of the second forbearance agreement, Cook effectively relinquished whatever right he had to assert the claims in his complaint when he signed the second forbearance agreement on his own behalf and on behalf of HGroup. Releases are contractual in nature and are governed by traditional

---

[16]The subsection reads as follows:
[HGroup and Cook have no] defense, offset or counterclaim with respect to the payment of the Present Debt or performance of the Original Agreements, or any other document delivered to [Wells Fargo] in connection with any of the foregoing or with respect to any amount owing to Bank. To the extent [HGroup and Cook] has any claim, cause of action or demand whatsoever against [Wells Fargo], [HGroup and Cook] each hereby release, remise and discharge [Wells Fargo] . . . from any and all such claims, demands or causes, whether known or unknown, vested or contingent, from the beginning of time to the date of this Agreement and waive the provisions of any law . . . providing that a general release such as that contained herein does not extend to claims that a party does not know of or suspect to exist in its favor at the time it gives such release[.]

14

principles of contract law. *McNiell v. Rice Engineering & Operating, Inc.*, 2003-NMCA-078, 133 N.M. 804, 70 P.3d 794; Restatement (Second) of Contracts § 284 cmt. c. (1981). The parties do not contest that the second forbearance agreement constitutes a valid contract. *See Board of Educ., Gadsden Independent School Dist. No. 16 v. James Hamilton Const. Co.*, 1994-NMCA-168, ¶ 15, 119 N.M. 415, 891 P.2d 556 (stating rule that "the essence of a valid agreement is consideration" (internal quotation marks and citation omitted)); *Ritter v. Albuquerque Gas & Electric Co.*, 1943-NMSC-035, ¶ 19, 47 N.M. 329, 142 P.2d 919 (stating, " '[n]o rule of law is better settled than that an agreement to forbear proceedings at law or in equity to enforce a well-founded claim is a sufficient consideration to support a promise' ").

{21} In exchange for their release of claims against Wells Fargo, HGroup and Cook received Wells Fargo's forbearance from foreclosing on HGroup's debts. *Ritter,* 1943-NMSC-035, ¶ 47. The release therefore does not permit HGroup and Cook to bring claims such as those in Cook's complaint—particularly those arising out of any alleged breach of the first forbearance agreement—against Wells Fargo. Our analysis based on the parties' release adequately addresses the issue of whether Cook's claims were properly dismissed. We therefore do not address whether Wells Fargo's novation and ratification arguments pass muster.

**iii.** **Wells Fargo Points to Evidence in the Record to Support its Assertion of Release**

15

{22} In support of its assertion that the terms of this agreement are undisputed material facts, Wells Fargo provided an affidavit attesting to its validity, and provided a copy of the agreement as an exhibit thereto. In addition to failing to respond to Wells Fargo's motion, Cook did not contest the validity of the second forbearance agreement, nor did he contest the significance of its terms. These facts are sufficient to enter summary judgment, as a matter of law, for Wells Fargo as to the dismissal of Cook's claims. *Self*, 1998-NMSC-046, ¶ 6. Although Cook argued extensively against summary judgment during the third and fourth hearings, in his briefing, he directs us to no evidence or facts of record in the case. Arguments of counsel are not evidence upon which a trial court can rely in a summary judgment proceeding. *Trujilo v. Puro*, 1984-NMCA-050, ¶ 16, 101 N.M. 408, 683 P.2d 963. Pursuant to the law governing summary judgment, the district court held a hearing, Cook presented his arguments, and the court based its decision on the undisputed material facts. Summary judgment was therefore properly granted. We affirm the district court's dismissal of Cook's claims in granting summary judgment for Wells Fargo.

**c.    Summary Judgment was Properly Granted—No Genuine Issue of Material Fact Exists**

{23} Based on the undisputed facts asserted and supported in Wells Fargo's motion for summary judgment, the district court was correct in concluding that a debt was

16

incurred and defaulted upon. The district court received uncontroverted evidence that these debts existed and that HGroup defaulted. Wells Fargo proffered an affidavit from a bank official attesting to the existence of the debts. It also provided copies of the various notes, pledges of collateral, and guarantees from which the right to collect arose. Wells Fargo is therefore entitled to collect that which it is owed. *See* NMSA 1978 § 55-9-607(a) (2013) (stating that secured party may collect payment, performance, or proceeds from debtor or other person obligated on collateral); NMSA 1978 § 55-9-601(a)(1) (2006) (stating that, after default, secured party may "reduce a claim to judgment, foreclose[,] or otherwise enforce the claim . . . by any available judicial procedure.").

{24}    Cook attempts to argue that the agreement that gave Wells Fargo a security interest in HCAN's intellectual property was not supported by sufficient consideration. This argument fails as a matter of law. Our courts have consistently found forbearance alone to be sufficient consideration to support a contract. *See Ritter* 1943-NMSC-035*, ¶ 19 (stating, " '[n]o rule of law is better settled than that an agreement to forbear proceedings at law or in equity to enforce a well-founded claim is a sufficient consideration to support a promise' "); *see also Aragon v. Boyd*, 1969-NMSC-016, ¶ 20, 80 N.M. 14, 450 P.2d 614 (citing with approval the statement that "[t]he waiver of a right or forbearance to exercise the same is a sufficient consideration for a contract, whether the right be legal or equitable, or exists against

17

the promisor or a third person, provided it is not utterly groundless."(internal quotation marks and citation omitted)). Wells Fargo's forbearance was sufficient consideration for the Hydroscope entities' pledge of additional collateral.

{25}     The undisputed facts clearly show that HGroup was indebted to Wells Fargo and defaulted on those debts. While Wells Fargo undoubtedly met its burden to present a prima facie case of entitlement to judgment as a matter of law, Cook has failed to point to any material fact that would make dismissal of his claims in summary judgment improper. We therefore affirm the district court's grant of summary judgment.

**3.     District Court did not Abuse its Discretion in Denying Cook's Attacks on the Summary Judgment**

{26}     After the district court entered the order granting summary judgment, Cook filed several motions, all of which were aimed at reviving the summary judgment proceedings. Pursuant to its grant of summary judgment, the district court entered an order denying Cook's motion to strike Wells Fargo's motion for summary judgment.[17] Cook contested that order through a Rule 1-059 motion to reconsider. Cook also contested the grant of summary judgment itself through a motion to vacate. Both

---

[17]Cook had filed this motion in January, 2009, approximately a month before the district court issued its order granting summary judgment.

18

motions were denied in subsequent orders filed May 20, 2011.[18]

{27}    We review the denial of a motion to reconsider for abuse of discretion. *Wilde v. Westland Development Co., Inc.*, ¶ 35, 148 N.M. 627, 241 P.3d 628. The denial of a motion to vacate is also reviewed for abuse of discretion. *Edward Family Ltd. Partnership v. Brown*, 2006-NMCA-083, ¶ 17, 140 N.M. 104, 140 P.3d 525. An abuse of discretion occurs through application of the incorrect standard or substantive law, reliance on clearly erroneous fact finding, or application of correct legal standards in an incorrect manner. *LaBalbo v. Hymes*, 1993-NMCA-010, ¶ 11, 115 N.M. 314, 850 P.2d 1017. Having concluded that Wells Fargo's motion for summary judgment was properly granted, we hold that the district court did not abuse its discretion when it denied Cook's motion to strike Wells Fargo's summary judgment motion and vacate the judgment entered pursuant to it. We affirm.

**B.    Cook's Cross Complaint and Counter Claims**

{28}    After the order granting summary judgment, Cook filed a pleading entitled Counterclaims and Cross Complaint. In it, Cook made numerous claims against Wells

---

[18]On April 6, 2009, before the  district court was able to hold a hearing on the motion to vacate summary judgment and motion to strike Wells Fargo's summary judgment motion, Cook appealed both orders from which those motions stemmed. On January 7, 2010, in response to this court's proposed summary disposition where we proposed to hold that the orders appealed were not final,  Cook requested that the appeal be returned to the district court.  On March 18, 2010 we remanded the first appeal back to the district court for further proceedings.

19

Fargo. Wells Fargo filed a motion to strike or dismiss this pleading. After holding a hearing on whether Cook was properly allowed to file such a pleading, the district court dismissed it without prejudice. Cook filed a motion to reconsider the dismissal, which the district court denied the same day.

**1.    Standard of Review**

{29}    We review the district court's decision to grant a motion to strike for an abuse of discretion. *See Gallegos v. Nevada Gen. Ins. Co.*, 2011-NMCA-004, ¶ 8, 149 N.M. 364, 248 P.3d 912. An abuse of discretion occurs through application of the incorrect standard or substantive law, reliance on clearly erroneous factfinding, or application of correct legal standards in an incorrect manner. *LaBalbo*, 1993-NMCA-010, ¶ 11.

**2.    The District Court Properly Dismissed Cook's Counterclaims and Cross Complaint**

{30}    The Rules of Civil Procedure require that Cook obtain the district court's permission to file claims such as those listed in Cook's Counterclaims and Cross Complaint. Those claims fit, with some overlap, into three categories: (1) claims asserted in Cook's first complaint against Wells Fargo, which were already the subject of the summary judgment action; (2) claims that had accrued when the original complaint was filed but which had been omitted from it; (3) claims that accrued after the first complaint was filed.

20

{31} The first category of claims is contemplated by Rule 1-013(A) NMRA. Under that rule, a counterclaim is a claim brought against an opposing party, which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Rule 1-013(A) NMRA (2009) (also requiring that the party has the claim at the time of serving the pleading, and that the claim not require the presence of a third party outside of the court's jurisdiction). A party need not state a claim if, when the action is commenced, the claim is the subject of another pending action. Rule 1-013 NMRA(A)(1) (2009). Cook's claims that fall into this first category include claims for breach of contract, fraud associated with the failure to contemporaneously execute an agreement with a third party in accordance with the Forbearance Agreement, aiding and abetting a breach of fiduciary duty, and violation of the Unfair Practices Act.

{32} The second category of claims is covered by Rule 1-013(F), allowing a party, whose claim had accrued when the original pleading was filed but was omitted, to, "by leave of court[,] set up the counterclaim by amendment." Rule 1-013(F) NMRA (2009); *See Morrison v. Wyrsch*, 1979-NMSC-093, ¶ 6, 93 N.M. 556, 603 P.2d 295 (holding that the addition of counterclaims by amendment is governed exclusively by Rule 1-013(F)). A pleading may be amended "only by leave of court or by written consent of the adverse party." Rule 1-015(A) NMRA (2009). Cook's claims, contained in his Counterclaims and Cross Complaint, which fit in this category include breach of good faith, negligent misrepresentation, intentional interference with

contract, civil conspiracy, and prima facie tort.

{33} The third category of claims is covered by Rule 1-013(E), allowing claims that mature after the initial pleading is already served to, "with the permission of the court, be presented as a counterclaim by supplemental pleading." Rule 1-013(E) NMRA (2009). A court may, upon motion of a party, permit that party to serve a supplemental pleading setting forth "events which have happened since the date of the pleading sought to be supplemented." Rule 1-015(D) NMRA (2009). A supplemental complaint is the proper method of bringing a cause of action that relates to the same matter but did not exist at the time the suit was brought. *See U.S. v. Rio Grande Dam & Irr. Co.*, 1906-NMSC-013, ¶ 15-17, 13 N.M. 386, 85 P. 393. The claims Cook brought that fit into this category include spoliation of evidence and malicious abuse of process.

{34} Each claim against Wells Fargo in Cook's Counterclaims and Cross Complaint represent amendments or supplements to Cook's original complaint that required the prior consent of the district court to file. Cook concedes that he did not receive the district court's permission. Under Rule 1-013 and 1-015, these amendments and supplements were properly dismissed for failure to obtain the consent of the court prior to filing them. We conclude that the district court's order dismissing Cook's pleading and denying the motion to reconsider was supported by the facts and law in light of the duplicative nature of Cook's claims. We agree with the district court and affirm its order granting Wells Fargo's motion to strike or dismiss Cook's

22

counterclaims and cross complaint.

## C.     Preliminary Injunction

{35}     After filing his Counterclaims and Cross-Complaint, Cook filed multiple pleadings in the district court. In October 2009—after Cook filed no less than eight filings duplicative of those resolved at other stages in the litigation, Wells Fargo asked the district court to enjoin Cook from filing any motions, pleadings, or other filings without the assistance of counsel or the district court's permission.  During the ensuing hearing, the parties presented their arguments for and against a preliminary injunction. The district court orally acknowledged the importance of Cook's constitutional right to access the courts.  However, the district court also pointed out that certain constitutional rights are "not unlimited, and when conduct is malicious, oppressive, vexatious, and abusive and burdensome and repetitive, then there is a basis at that point to put in a process that will review pleadings before they are filed." The district court emphasized that if Cook's pleadings sought to litigate a new matter and not something that had already been litigated or heard, he would be permitted to file them. The district court issued the injunction, characterizing Cook's litigation activity as "abusive and vexatious."

{36}     Cook petitioned the New Mexico Supreme Court for a writ on October 26,

2009, in an attempt to prevent the enforcement of that injunction.[19] The Supreme Court denied the petition. Recognizing he was then well outside the deadline for filing a notice of appeal with this Court, Cook then requested that the New Mexico Supreme Court toll the deadline to timely appeal the injunction with this Court. That request was denied January 27, 2010.

**1.      Cook's Appeal from the Injunction is Untimely**

{37}      The New Mexico Rules of Appellate Procedure require that an appeal be filed within thirty days after the judgment being appealed is filed in district court. Rule 12-201(A)(2) NMRA. Cook's notice of appeal was filed June 20, 2011, well over a year after the injunction was entered. In light of Cook's own recognition of the procedural deadline to file and the disinclination of the Supreme Court to extend it, as well as the delay of more than a year and a half between the injunction and the appeal, we conclude that Cook's appeal of the injunction was untimely, and dismiss Cook's appeal of the injunction.

**2.      The District Court did not Err in Issuing Orders Enforcing the Injunction**

{38}      Cook continued to file pleadings in the district court even after the district court

---

[19]Cook's pleading bore the title, "Notice of Appeal," but was filed pursuant to NMRA 12-504. We therefore treat that pleading as a writ petition. *Cf. Laumbach v. Board of County Com'rs of Sam Miguel County*, 1955-NMSC-096, ¶ 15, 60 N.M. 226, 290 P.2d 1067 (holding that, regardless of what a pleading is entitled, if its contents reveal it is a request for a writ, it will be treated as a petition for writ).

24

issued its injunction. For instance, Cook entered a "Proposed Findings of Fact and Conclusions of Law," and an "Opposition Response." These filings resulted in the district court entering two orders enforcing the injunction: an order striking Cook's proposed findings of fact and conclusions of law, and an order to strike and for sanctions in response to Cook's "Opposition Response." Cook appeals both these orders enforcing the injunction.

**a.      The Injunction Against Cook is Valid**

{39}     Cook's failure to timely appeal the district court's injunction against him renders it binding on the district court. *Cf. Ortiz v. Gonzales*, 1958-NMSC-109, ¶ 24, 64 N.M. 445, 329 P.2d 1027 (stating that divorce decree that was not appealed from was therefore "binding on the trial court where suit was brought to enforce it."); *Coe v. City of Albuquerque*, 1966-NMSC-196, ¶ 16, 76 N.M. 771, 418 P.2d 545 (concluding that portion of the trial court's judgment that respondents did not appeal remained in effect although other portions were held to be erroneous).

**b.      The District Court did not Abuse its Discretion in Striking Pleadings Filed Contrary to the Terms of the Injunction**

{40}     We review a district court's decision to impose sanctions for an abuse of discretion. *State ex rel. New Mexico State Highway and Transp. Dept. v. Baca*, 1995-NMSC-033, ¶ 26, 120 N.M. 1, 896 P.2d 1148. An abuse of discretion occurs through application of the incorrect standard or substantive law, reliance on clearly erroneous

25

factfinding, or application of correct legal standards in an incorrect manner. *LaBalbo,*1993-NMCA-010, ¶ 11.

{41}	The record in this case is monstrous—more than 4,000 pages—and this appeal is just the latest step in a long, twisted litigation history. After the injunction was issued, and despite the district court's previous advice and admonitions against violating the injunction, Cook continued to file with the court.  The United States District Court and the United States Bankruptcy Court have characterized Cook's litigation strategy as "vexatious and abusive.". *In re Cook*, No. 7-04-17704-SA, 2012 WL 5408905, at *16 (Bankr. D.N.M. Nov. 6, 2012) (stating that this case's "unorthodox posture is almost wholly attributable to the efforts of pro se litigant Daniel Cook. Mr. Cook's filings have moved the suit hither and yon—from court to court, judge to judge—forcing the parties and the courts to untangle novel, largely unsupported arguments and procedural machinations.") *aff'd*, 497 B.R. 167 (B.A.P. 10th Cir. 2013). We wholeheartedly agree with their characterization.

{42}	Cook's incessant filings have distorted this case, making it virtually

unrecognizable as the simple foreclosure action and summary judgment order that it is. Cook does not dispute that he filed numerous duplicative pleadings and motions in the courts listed above. He provides this Court with nothing demonstrating that the limitations set by the district court were unduly burdensome on his constitutional

rights. It is clear from the record that the district court's injunction restricts no more than Cook's "ability to hamstring the judicial system of this state with unapproved pro se filings[.]" *State ex rel. Bardacke v. Welsh*, 1985-NMCA-028, ¶ 18, 102 N.M. 592, 698 P.2d 462 (stating also that "a less restrictive method of regulating access is not required when the facts show a pattern of conduct which is either vexatious, oppressive or for the purpose of harassment.").

{43} Trial and appellate courts have "inherent power to impose a variety of sanctions on both litigants and attorneys in order to regulate their docket, promote judicial efficiency, and deter frivolous filings."*Baca*, 1995-NMSC-033, ¶ 11. (internal quotation marks and citation omitted). A court's ability "to command the obedience of its litigants" is necessary to the effective performance of judicial functions. *Id.* Cook has failed to show any error in the district court's enforcement of the permissible injunction through its subsequent orders. As such, we conclude the district court did not abuse its discretion. We affirm the district court's order striking Cook's proposed findings of fact and conclusions of law, and its order to strike and for sanctions.

IV. **CONCLUSION**

{44} In disposing of this case, we lament that it turned into such a laborious paper battle. We affirm the district court's issuance of eight of the orders appealed, and dismiss Cook's appeal of the injunction as untimely.

27

{45}    **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**CYNTHIA A. FRY, Judge**